# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0979

═══════════

AMAZON.COM, INCORPORATED, APPELLANT,

v.

MORGAN MCMILLAN, INDIVIDUALLY AND AS NEXT FRIEND OF E.G., A MINOR,
APPELLEE

═══════════════════════════
ON CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
═══════════════════════════

**Argued March 25, 2021**

JUSTICE BUSBY delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE LEHRMANN, JUSTICE BLAND, and JUSTICE HUDDLE joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE DEVINE joined.

JUSTICE BLACKLOCK did not participate in the decision.

Texas law imposes strict liability on manufacturers and some sellers of defective products. In the first few decades after we recognized common-law strict products liability, the people and entities held liable were typically part of a conventional distribution chain: upstream manufacturers, mid-stream distributors, and downstream retailers.[1]  Today, third-party e-commerce platforms—such as Amazon, eBay, Etsy, and Alibaba—provide many of the services traditionally performed by distributors and retailers, enabling merchants from all over the world

---

[1] *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789, 790 n.3 (Tex. 1967); RESTATEMENT (SECOND) OF TORTS § 402A cmt. f (1965).

to reach consumers directly. But are such online marketplaces strictly liable for defective products manufactured and owned by third parties? The Fifth Circuit asks whether Amazon.com is a "seller" under Texas law when it does not hold title to third-party products sold on its website but controls the process of the transaction and delivery.

We answer no. The Legislature's definition of "seller" in Chapter 82 of the Civil Practice and Remedies Code is consistent with and does not expand the common-law definition. Under that definition, when the ultimate consumer obtains a defective product through an ordinary sale, the potentially liable sellers are limited to those who relinquished title to the product at some point in the distribution chain. Therefore, Amazon is not a "seller" of third-party products under Texas law.

**BACKGROUND**

Amazon.com is an e-commerce company with a global reach. From its beginnings as a small online bookseller, Amazon has expanded its business model to include general consumer retail, digital content streaming, web services, and—more recently—groceries. Amazon's online retail marketplace offers Amazon-branded products, third party-branded products owned by Amazon and listed on the website as "sold by" Amazon, and products owned and "sold by" third parties. According to the website's "Conditions of Use," to which all customers must agree when making a purchase, Amazon makes no warranties for products "sold by" third-party merchants and disclaims responsibility for third-party product descriptions. Other than a short line of text under the "buy" button identifying the seller, the experience of purchasing products "sold by"

third-party merchants is no different from buying products "sold by" Amazon.[2] When a customer purchases a third-party product listed on Amazon.com, Amazon processes payment, retains a portion of the purchase price, and remits the remainder to the third-party merchant.

A third-party merchant who sells a product through Amazon.com may store and ship that product itself or use the Fulfillment by Amazon (FBA) logistics service.[3] Under FBA, the merchant uses Amazon warehouses to store product inventory, and Amazon packages a product when it is sold and delivers it to a carrier for shipment to the purchaser. The merchant retains title to its products prior to the ultimate customer purchase. But Amazon maintains significant control over products sold through FBA. Amazon has the ability to refuse products and controls all aspects of customer service. Amazon also processes returns and delivers customer refunds for FBA products, and merchants must reimburse Amazon for these costs.

This suit concerns a product "sold by" a third-party merchant that used the FBA service. According to the allegations of the complaint filed in federal court, Morgan McMillan's husband purchased a remote control on Amazon.com that was "sold by" "USA Shopping 7693." Almost a year later, McMillan's nineteen-month-old daughter opened the remote's battery compartment and swallowed the included button battery. Though the battery was surgically removed, battery fluid caused permanent damage to the child's esophagus. When McMillan sought information from Amazon about "USA Shopping 7693," Amazon identified the account as belonging to Hu Xi Jie,

---

[2] Third parties who wish to sell products on Amazon must create an account and agree to the Amazon Services Business Solutions Agreement (BSA). The BSA requires that third-party products include a product description and "comply with all applicable laws." Amazon agrees to list the products on its website, "conduct merchandising and promote" the products, and include the products in the company's star-based rating system.

[3] FBA is also available to merchants who sell through channels other than Amazon.com.

3

an FBA user with an address in China. Amazon subsequently suspended Hu Xi Jie's account and removed the remote from its website.

McMillan sued both Amazon and Hu Xi Jie in the U.S. District Court for the Southern District of Texas, alleging, among other causes of action, strict liability for design and marketing defects. McMillan attempted to serve Hu Xi Jie through the Texas Secretary of State, *see* TEX. CIV. PRAC. & REM. CODE § 17.044(b), but Hu Xi Jie did not answer or make an appearance. *McMillan v. Amazon.com, Inc.*, 433 F. Supp. 3d 1034, 1038 (S.D. Tex. 2020). At the close of discovery, Amazon moved for summary judgment on the ground that it was not a seller of the remote and therefore could not be held strictly liable. *Id.* at 1039.

McMillan responded that Amazon was a non-manufacturing seller that could be held liable under the Texas Products Liability Act. *Id.*; s*ee* TEX. CIV. PRAC. & REM. CODE § 82.003. Although non-manufacturing sellers typically are not liable under the Act, an exception applies when the manufacturer is not subject to the jurisdiction of the court. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(7)(B). Because McMillan had alleged that Hu Xi Jie was the manufacturer, and Hu Xi Jie did not make an appearance, the federal district court concluded that McMillan had taken the initial steps required to trigger the exception. *McMillan*, 433 F. Supp. 3d at 1040.[4]

The district court denied Amazon's motion for summary judgment. *Id.* at 1044. Applying the Act's definition of seller, the court concluded that: (1) Amazon's role as a service provider did not preclude it from also being a seller, *id.* at 1042; (2) Amazon's possession and control of the remote was evidence that it engaged in the business of placing the product in the stream of

---

[4] The section 82.003 exceptions are not material to our analysis at this stage of the case. If Amazon is correct that it is not a seller, then it cannot be held liable under the Act regardless of whether Hu Xi Jie is the manufacturer or is subject to the court's jurisdiction.

4

commerce, *id.* at 1043; (3) Amazon's lack of title did not preclude it from being a seller, *id.* at 1044; and (4) Amazon's relationship to the manufacturer aligned with the policy justifications for strict liability. *Id.*

On the parties' joint motion, the district court certified its order for interlocutory appeal, and the Fifth Circuit granted permission to appeal. *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 198 (5th Cir. 2020). Noting our track record of deciding cases timely,[5] the Fifth Circuit certified the following question to this Court, which we accepted:

> Under Texas products-liability law, is Amazon a "seller" of third-party products sold on Amazon's website when Amazon does not hold title to the product but controls the process of the transaction and delivery through Amazon's Fulfillment by Amazon program?

*Id.* at 203.

## ANALYSIS

### I.      Standard and scope of review

"The Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1; *accord* TEX. CONST. art. V, § 3-c(a). Because the scope of this interlocutory appeal is limited to the question whether Amazon is a seller, we must construe the Legislature's definition of seller in section 82.001(3) of the Civil Practice and Remedies Code—a question of law that we consider de novo. *Regent Care of San Antonio, L.P. v. Detrick*, 610 S.W.3d 830, 834 (Tex. 2020). We have not previously

---

[5] Challenge accepted. *See* 983 F.3d at 203 n.51 ("No pressure.").

addressed whether an e-commerce platform that handles many of the tasks involved in its client's sale of a product to a consumer is also considered a seller.

Though the Fifth Circuit did not limit the form or scope of our answer, we typically "provide answers solely as to the status of Texas law on the questions asked." *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 128 (Tex. 2019) (quoting *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 620 (Tex. 2004)). We therefore focus our answer on the specific type of transaction at issue: third-party sales on Amazon.com through FBA. We do not address whether Amazon would be a seller in any other circumstance.

## II.     The statutory meaning of "seller" in Chapter 82 is consistent with our cases and the Restatements.

Before the Legislature adopted the Texas Products Liability Act, sellers of defective products could be held strictly liable under the common law. *See New Tex. Auto Auction Servs., L.P. v. Gomez de Hernandez*, 249 S.W.3d 400, 403 (Tex. 2008); RESTATEMENT (SECOND) OF TORTS § 402A. Under the Act, codified as Chapter 82 of the Civil Practice and Remedies Code, the general rule is the opposite: a non-manufacturing seller "is not liable for harm caused . . . by [a] product unless the claimant proves" that one of the enumerated exceptions applies. TEX. CIV. PRAC. & REM. CODE § 82.003.[6]

Although the extent of seller liability is different under the common law and Chapter 82, the definition of who constitutes a seller is similar. The statute defines a seller as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id.*

---

[6] Chapter 82 also creates a statutory duty for manufacturers to indemnify innocent sellers. TEX. CIV. PRAC. & REM. CODE § 82.002.

§ 82.001(3).  To decide whether Amazon is a seller under Chapter 82, we must determine whether Amazon's role in the distribution chain amounts to "distributing or otherwise placing" a product in the stream of commerce.[7]

Though statutory language should be construed according to common usage, phrases that have acquired a particular meaning—whether by definition or otherwise—should be construed accordingly.  TEX. GOV'T CODE § 311.011; *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019).  Because we presume that the Legislature uses statutory language "with complete knowledge of the existing law and with reference to it," *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012), we have concluded that concepts included in the Legislature's "seller" definition acquired particular meaning from our common-law products liability cases.  *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 39 n.5 (Tex. 2016) ("[T]he Legislature chose to define 'seller' in chapter 82 just as we have construed the term for strict-liability purposes."); *see also Phillips v. Bramlett*, 407 S.W.3d 229, 241 (Tex. 2013) (concluding that the Legislature selected a term "for the purpose of conveying a meaning consistent with that which we historically afforded to it").  We therefore look to that body of law, as well as to dictionary definitions, for guidance on the meaning of "distributing or otherwise placing."[8]

The Texas common law of products liability has been shaped by section 402A of the Second Restatement of Torts.  *See New Tex. Auto*, 249 S.W.3d at 402 (acknowledging the widespread adoption of section 402A by American courts); RESTATEMENT (SECOND) OF TORTS

---

[7] It is not disputed that Amazon's actions were undertaken for a commercial purpose and that the product was purchased for use.

[8] Our dissenting colleagues generally agree that it is appropriate to consider how these terms have been used in court decisions as well as the meaning courts have given to the legal concepts the Legislature selected to accompany them—"engaged in the business" and "the stream of commerce."  *See post* at __ & n.3.

§ 402A (imposing strict liability on those who sell products in unreasonably dangerous and defective conditions if the seller is "engaged in the business" of selling the product and the product reaches the consumer without substantial change). When we adopted section 402A in 1967, we identified as sellers not only manufacturers but also non-manufacturing distributors. *McKisson*, 416 S.W.2d at 789, 790 n.3. We later recognized that dealers are sellers. *See Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 92 (Tex. 1974), *overruled on other grounds by Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984).

We have also extended seller liability to a limited category of entities that engage in "non-sale commercial transactions." For example, entities that gratuitously transfer title to defective promotional goods with the expectation of making future sales are sellers. *McKisson*, 416 S.W.2d at 789, 792. Entities that retain title to but share the use of defective products as part of a commercial transaction—including bailors and lessors—can be sellers. *See Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376–77 (Tex. 1978); *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex. 1975), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

Additionally, those that provide a mix of goods and services may be sellers. *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 899 (Tex. 2010) (holding that stucco subcontractor was seller of stucco that it provided with installation services). Thus, performance of services does not in itself preclude seller status.

We have refused to extend liability to all persons or entities involved in the distribution chain, however. Those that provide both goods and services are not sellers if the provision of products is incidental to the provision of services. *Centerpoint Builders*, 496 S.W.3d at 40 (holding

8

that "a general contractor who is neither a retailer nor a wholesale distributor of any particular product is not necessarily a 'seller' of every material incorporated into its construction projects"). Likewise, those that merely assist or facilitate sales—such as auctioneers, advertising agencies, newspapers, internet providers, and shipment companies—are not sellers. *See New Tex. Auto*, 249 S.W.3d at 404 (citing RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 20 cmt. g (1998), which provides that "[p]ersons assisting or providing services to product distributors, while indirectly facilitating the commercial distribution of products, are not subject to liability").

The definition of "seller" the Legislature chose in Chapter 82 reflects these decisions, which bring certain non-sale commercial transactions within the scope of products liability. The Legislature did not limit its definition to the common meaning of seller: someone who parts with title for a price. *See* TEX. BUS. & COM. CODE § 2.106(a); *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 42 (Tex. 2020). Such ordinary sellers are covered by the portion of the definition that includes those "engaged in the business of distributing" a product. TEX. CIV. PRAC. & REM. CODE § 82.001(3); *Distributor*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "distributor" as a "supplier that sells chiefly to . . . commercial users"). But Chapter 82 sellers also include non-selling entities that, for a commercial purpose, "otherwise plac[e]" products in the stream of commerce for use or consumption, thus occupying a position equivalent to those who make sales. *See, e.g.*, *McKisson*, 416 S.W.2d at 792 ("One who delivers an advertising sample to another with the expectation of profiting therefrom through future sales is in the same position as one who sells the product.").

The Restatement (Third) of Torts: Products Liability chose similar concepts to signal the inclusion of non-sale commercial transactions. Section 1 imposes liability on entities "engaged in

9

the business of *selling or otherwise distributing*" defective products. RESTATEMENT (THIRD) OF

TORTS: PROD. LIAB. § 1 (emphasis added). "Selling" occurs when "one transfers ownership" of a

product. *Id.* § 20. In contrast, "[o]ne otherwise distributes a product when, in a commercial

transaction other than a sale, one provides the product to another either for use or consumption or

as a preliminary step leading to ultimate use or consumption." *Id.* "Sellers" include

"manufacturers, wholesalers, and retailers," while "non-sale product distributors" include "lessors,

bailors, and those who provide products . . . as a means of promoting either the use or consumption

of such products or some other commercial activity." *Id.*

The Third Restatement's definition of "selling or otherwise distributing" is thus consistent

with, and does not extend beyond, our common-law "seller" definition. We see no reason to give

the Legislature's phrase "distributing or otherwise placing" a substantially different meaning.[9]

Our dissenting colleagues take a different approach, relying on the dictionary definition of

"place" and picking out additional verbs mentioned in some of our cases that they view as

synonyms—such as "supplying, delivering, introducing, or releasing the product into the stream

of commerce" or "physically conveying or transferring products within the sales process." *Post*

at __. This approach does not yield a helpful definition that courts can apply consistently to cases

involving similar facts. For example, does "delivering" or "physically conveying" make every

mail carrier or delivery service a seller? Or does "introducing" or "releasing" indicate that only

---

[9] Chapter 82's "seller" definition was drafted before the Third Restatement. *See* Act of Feb. 23, 1993, 73d Leg., R.S., ch. 5, § 1, 1993 TEX. GEN. LAWS 13 (codified at TEX. CIV. PRAC. & REM. CODE § 82.001); RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. (1998). But "[i]n restating the law of products liability more than a quarter of a century [after the Restatement Second], the Institute had before it thousands of judicial decisions that had fine-tuned the law of products liability in a manner hardly imaginable when Restatement Second was written." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. INTRO. Because the Legislature and the drafters of the Third Restatement were responding to the same developments in products liability, namely the inclusion of non-sale methods of distribution, it is reasonable to read the language of each consistently.

the person or entity at the head of the stream of commerce is a seller? The dissent's approach provides little guidance in answering such questions.

### III. Chapter 82 does not expand liability for those not considered sellers under the common law.

McMillan argues that our common-law cases require "only possession at the time of sale, not title," to be considered a seller. In particular, she points to our statement in *Firestone Steel Products Co. v. Barajas* that "a defendant does not have to actually sell the product; introducing the product into channels of commerce is enough." 927 S.W.2d 608, 613 (Tex. 1996). She likewise contends that "Chapter 82 does not require [a seller] to have title or ownership interest in the products sold."

McMillan's arguments are incorrect because they attempt to commingle principles that our sale and non-sale cases have kept separate. In cases where an ordinary sale takes place, we have never held that a seller can be anyone other than the person or entity who relinquishes title. And nothing in Chapter 82 signals that the Legislature intended to expand seller liability beyond that available under the common law.

Chapter 82 is a liability-restricting statute.[10] As noted above, it provides that non-manufacturing sellers are not liable for product defects unless one of the enumerated exceptions applies. *See* TEX. CIV. PRAC. & REM. CODE § 82.003 (imposing liability on non-manufacturing seller when—among other things—it has altered, helped design, or created instructions for the defective product, or when the manufacturer is insolvent or not subject to the court's jurisdiction).

---

[10] Other jurisdictions similarly restrict the application of strict products liability to non-manufacturing sellers. *See, e.g.*, COLO. REV. STAT. § 13-21-402; OHIO REV. CODE ANN. § 2307.78; TENN. CODE ANN. § 29-28-106; WASH. REV. CODE ANN. § 7.72.040.

11

Thus, Chapter 82 does not expand the pool of potentially liable non-manufacturing sellers beyond those recognized at common law; it reduces that pool.

Given that Chapter 82 is more restrictive than the common law, we see no indication that the Legislature intended for "distributing or otherwise placing" to include commercial behavior beyond ordinary sales and previously qualifying non-sale commercial transactions. Accordingly, the necessary qualities of those transactions provide the limits of "seller" status under Chapter 82. Our cases show that both sales and non-sale commercial transactions, at a minimum, involve sellers that hold or relinquish title in a product's distribution chain.

When the facts involve a sale in the ordinary sense, none of our cases have suggested that anyone other than a person or entity who has *relinquished* title in the chain can be a "seller." *See Fresh Coat*, 318 S.W.3d at 899 (holding stucco subcontractor that purchased stucco from manufacturer and sold it to homeowner as part of installation was "seller"); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 457 (Tex. 2008) (describing title-transferring importer as "seller" of butane lighters to non-manufacturing retail "seller"); *see also Firestone Steel Prods.*, 927 S.W.2d at 616 (holding designer of original product concept was not liable for injuries caused by manufacturer who copied and modified product's design because designer was not involved in production or distribution of defective product).[11]

---

[11] When a sale has occurred, holding and relinquishing title is a necessary—but not sufficient—requirement for "seller" status. Relinquishing title does not confer "seller" status when doing so is atypical or incidental to an entity's regular business operations. *See Centerpoint Builders*, 496 S.W.3d at 40 ("[W]hether Centerpoint technically sold trusses to Glenmont does not make it 'engaged in the business of' commercially distributing that product."); *New Tex. Auto*, 249 S.W.3d at 404–06 (holding that auctioneer was not seller because it did not normally take title to auctioned vehicles even though it had done so in this case).

Likewise, when a non-sale commercial transaction occurs, none of our cases have suggested that anyone other than those who have at least *held* title in the chain can be a seller. *See McKisson*, 416 S.W.2d at 790–92 (holding distributor that gratuitously transferred title to hair-product sample with expectation of future sales was seller); *Armstrong*, 570 S.W.2d at 376–77 (acknowledging that bailor may be held liable for defective products provided for public use when "bailment for mutual benefit" accompanies a future sale of the bailed property, other property, or services); *Rourke*, 530 S.W.2d at 800–01 (holding rental company that held title to and rented out defective scaffolding was subject to strict liability). Our cases and Chapter 82's language indicate that ordinary sales and non-sale commercial transactions are distinct from one another; there is no indication that the Legislature intended for non-sale concepts to apply when a sale occurs. The "or" conjunction in "distributing or otherwise placing" suggests that a person or entity may become a "seller" by engaging in one of the transaction types, but not both.[12] *See also* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 20 (defining "selling or otherwise distributing" to require a transfer of ownership unless a non-sale commercial transaction is involved).

Our cases also have acknowledged that non-sale liability is possible only when the person or entity provides the product in a way that puts them in the same position as one making a sale. *See New Tex. Auto*, 249 S.W.3d at 403–04; *McKisson*, 416 S.W.2d at 792. We have not imposed

---

[12] Another reason the two types of commercial transactions should be considered mutually exclusive is that an ultimate consumer sale generally negates the possibility that liability will arise from a non-sale commercial transaction. Unlike ordinary sales, which may occur several times in a single distribution chain, non-sale commercial transactions typically occur at the end of a distribution chain. For example, a foreign manufacturer may sell a product to a domestic distributor, who then sells to a retailer, who then sells to an ultimate consumer/user. Each sale may trigger Chapter 82 liability for the non-manufacturing seller if a defective product reaches a consumer and one of the chapter's exceptions is met. By contrast, a non-sale commercial transaction generally occurs only between a seller and the ultimate user of the defective product. Thus, when a distribution chain ends in an ultimate consumer sale, an injured consumer will sue on the sale, not on a non-sale transaction.

13

non-sale liability on bailees or consignees in cases where a sale occurs. *See New Tex. Auto*, 249 S.W.3d at 402, 404 (holding that commercial auctioneers do not place, but merely facilitate the placement of, products in the stream of commerce); RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 20 cmt. g ("Sales personnel and commercial auctioneers are also outside the rules of this Restatement.").

Thus, the district court's statement that "Texas law does not require an entity to transfer title or sell a product to be considered a seller"[13] is not generally applicable. In cases where an ordinary sale occurs, a sale analysis—transfer of title for a price—is used to identify which person or entity qualifies as a seller of the product.

Our dissenting colleagues contend that distinguishing between sale and non-sale transactions and imposing liability only on persons or entities who held or passed title are new developments in the common law, not a summary of what the common law required when the Legislature enacted the "seller" definition in 1993. *Post* at __. We disagree. Many of the cases cited in the preceding paragraphs were decided prior to 1993, and every one of them fits the pattern we have described. The title inquiry is simply a straightforward way of capturing and synthesizing the common features that run through these precedents.

Considering title to determine seller status is also consistent with the approach taken by other jurisdictions that follow the Restatement's framework for strict products liability. Using this approach, many courts have concluded that Amazon is not a seller when it does not hold or relinquish title to the product. *See, e.g.*, *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 835 F. App'x 213, 216 (9th Cir. 2020) (holding that Amazon was not a "seller" under Arizona's common-

---

[13] *McMillan*, 433 F. Supp. 3d at 1044.

law Restatement-based multi-factor test, under which holding title is a factor); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 144 (4th Cir. 2019) (concluding that Amazon did not hold title and thus was not a "seller" under Maryland law, which is based on Restatement section 402A); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 397–98 (S.D.N.Y. 2018) (concluding that "regardless of what attributes are necessary to place an entity within the chain of distribution, the failure to take title to a product places that entity on the outside," and such a requirement is reinforced by the Restatement (Third) of Torts: Products Liability); *but see State Farm Fire & Cas. Co. v. Amazon.com Servs., Inc.*, 137 N.Y.S.3d 884, 889 (Sup. Ct. 2020) (disagreeing with *Eberhart* that title is dispositive under New York law).[14]

In sum, we conclude that when a product-related injury arises from a transaction involving a sale, sellers are those who have relinquished title to the allegedly defective product at some point in the chain of distribution. The rule that a person need not transfer title to be held strictly liable is limited to non-sale commercial transactions.

## IV. Amazon is not a "seller" under Texas law when it does not hold or relinquish title to an allegedly defective product.

Having explained the relevant legal principles, we next apply those principles to answer the Fifth Circuit's question. Here, the summary-judgment evidence shows that the distribution chain concluded with a sale to the consumer: McMillan obtained title to the remote for a price. She did not engage in a non-sale commercial transaction, such as receiving the remote through a

---

[14] Other jurisdictions have reached the same conclusion on other grounds. *See Fox v. Amazon.com, Inc.*, 930 F.3d 415, 425 (6th Cir. 2019) (holding that Amazon was not a "seller" under Tennessee law because it did not exercise sufficient control over a defective hoverboard); *Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766, 776–78 (N.D. Ill. 2019) (acknowledging that Illinois precedent does not limit the analysis to whether an entity transfers title, but holding that Amazon is not a "seller" based on its level of participation in the transaction).

15

lease or as a promotional sample. Therefore, Amazon is a "seller" if it either made the ultimate sale to McMillan or relinquished title at some point upstream in the distribution chain. Amazon did neither.

First, Amazon did not make the ultimate consumer sale because Amazon did not hold title to the remote and relinquish it to McMillan; Hu Xi Jie held title at the time of transfer. McMillan argues that Amazon's Conditions of Use—which provide for transfer of title upon Amazon's delivery of a product to the shipping company—establish that Amazon transferred title to her. But Amazon's ability to transfer title from Hu Xi Jie to a purchaser does not confer title on Amazon. Amazon's possession and transfer of Hu Xi Jie's products could be considered an entrustment, but entrustments do not make an entrustee a "seller" for strict-liability purposes. *See* TEX. BUS. & COM. CODE § 2.403(b) ("Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."); *Erie Ins. Co.*, 925 F.3d at 142–43 (applying Maryland law) (reasoning that Amazon's "entrustee" status is irrelevant to its "seller" status because entrustment protections relate to the validity of title, not whether an entity is liable for the provision of entrusted goods).

Second, there is no evidence that Amazon held or relinquished title to the remote at any point upstream from the sale to McMillan. As an FBA user, Hu Xi Jie maintained title to the inventory even while Amazon had possession. Possession followed by a transfer of title between third parties does not constitute a sale. In fact, none of Amazon's upstream actions—such as web hosting, advertising, marketing, warehousing, payment processing, and shipping—constituted a sale under Texas law. *See New Tex. Auto*, 249 S.W.3d at 403 (citing *Firestone Steel Prods.*, 927 S.W.2d at 616). Nor does considering these actions together change the result. By offering a suite

of marketing, financing, and logistics services to third-party sellers, Amazon has developed a business model that is not title dependent. And though Amazon's business model gives the company a significant amount of control over the process of the transaction and the delivery of the product, this control does not transform an otherwise non-title-holding sales facilitator into a "seller." *See id.* at 402, 405.

Because McMillan obtained the remote through a transfer of title for a price, and Amazon did not hold or relinquish title at any point in the remote's distribution chain, Amazon was not "engaged in the business of distributing or otherwise placing" the remote into the stream of commerce. On this record, therefore, Amazon is not a chapter 82 seller under Texas law.

### CONCLUSION

To be liable as a non-manufacturing seller of defective products under section 82.003, an entity must first qualify as a seller under section 82.001. We hold that "sellers" under section 82.001 are persons or entities engaged in the business of distributing products through ordinary sales or placing products in the stream of commerce through non-sale commercial transactions. Because the product in this case was sold on Amazon's website by a third party and Amazon did not hold or relinquish title, Amazon is not a seller even though it controlled the process of the transaction and the delivery of the product. We answer the Fifth Circuit's certified question no.

_____
J. Brett Busby
Justice

Opinion delivered: June 25, 2021

17