PAUL A. BONIN, Judge.
fiLenshonda Alexander sued Lakeside Imports, Inc., a car dealership, claiming that she suffered serious injury from a deploying airbag in a vehicle which had been serviced by Lakeside Imports, which was purchased from another automobile dealer. Ms. Alexander asserts that the dealership failed in its duty to adequately warn or properly instruct her with respect to the dangers associated with airbag deployment. Lakeside Imports filed a motion for summary judgment against Ms. Alexander, seeking the dismissal of all claims brought against it, and arguing that it owed no duty to warn Ms. Alexander because she did not purchase the vehicle from Lakeside Imports. The district court granted the motion, and dismissed with prejudice Ms. Alexander’s claims against Lakeside Imports after concluding as a matter of law that the dealership owed Ms. Alexander no duty in the absence of “privity.”
After our de novo review of both the legal issue and the record, we conclude that under the factual circumstances of this case Lakeside Imports stood in a relationship with Ms. Alexander so as to create a legally recognized obligation of conduct on its part for Ms. Alexander’s benefit. Accordingly, we conclude that Lakeside Imports owed a duty to Ms. Alexander to adequately warn or properly instruct her about the dangers associated with airbag deployment. Therefore, we |2reverse the district court’s granting of summary judgment in favor of Lakeside Imports and remand this matter for further proceedings.
For purposes of clarity, we define the duty declared herein accordingly: a seller of a vehicle (and its component parts) who knows, or should know, that the manufacturer’s warning is inadequate has a duty, at the time of sale or delivery, to warn reasonably foreseeable users of the danger inherent in the use of the product or instruct them in the proper use of the product to which the average consumer would not be aware.[1]
*671 We emphasize, however, that our opinion on this matter is limited by those facts available to us at this time. In other words, our opinion is based solely on the undisputed facts in the record as well as those material facts which are genuinely disputed at this point in the litigation. We also emphasize that our decision touches only on the element of duty and does not consider any other essential element of Ms. Alexander’s claim such as causation or breach .of duty. We will now explain our decision in greater detail.
I
Because the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question, this opinion will first discuss the underlying facts of this matter. See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1871 (La.1984).
Specifically, on February 1, 2002, Ms. Alexander was involved in an automobile accident wherein she sustained a severe brain stem injury. The accident came about when her 1995 Toyota Corolla was rear-ended and propelled |sinto a fixed restraining barrier along Interstate 10, causing her driver’s side airbag to deploy. Ms. Alexander asserts that her injuries were caused, in part, by the explosive deployment of the airbag.
This specific Toyota was equipped with first generation airbags. Ms. Alexander is a short, or small, statured person. It is undisputed that deployed airbags present a greater danger of harm to small persons, including children, because airbags deploy with a high velocity upon impact. -See U.S. Department of Transportation, National Highway Traffic Safety Administration, An Evaluation of the 1998-1999 Redesign of Frontal Air Bags, NHTSA Technical Report No. DOT HS 810 685, p. 3-5, August 2006. Because short-statured people generally sit closer to the steering wheel when driving, they place their head and chest in close proximity to the explosive force of an inflating airbag. The record indicates that people sitting closer to, or too close to, an airbag may experience the full force of an inflating airbag. Conversely, people sitting further away from a deploying airbag do not experience this force because the airbag inflates fully before it reaches the person. Id. The introduction of first generation airbags by the automobile industry created an added risk to short-statured drivers (as well as to infants and children) since these types of airbags have the potential to injure people sitting close to the airbag when it is deployed. Id. In 1995, the NHTSA began to promote industry-wide efforts to reduce the risk of such injuries. Id. at 2. One aspect of this campaign was to encourage automobile manufacturers to send revised warning labels to owners of cars that were manufactured before February 1997. The revised warning label had not been affixed to Ms. Alexander’s Toyota.
Ms. Alexander purchased the Toyota in 2001 from A-Quality Auto Sales, LLC, a used car dealership. Lakeside Imports, the original vendor of the Toyota, | ¿first obtained the vehicle in 1995. Specifically, the Toyota’s first user was a Mr. John DiCarlo, who initially leased the vehicle through Lakeside Imports, but subsequently purchased it in 1998. The original unrevised airbag warning was in place during the time of Mr. DiCarlo’s use of the vehicle. Lakeside Imports performed ongoing maintenance and service on the vehi- *672 ele throughout the period of Mr. DiCarlo’s use of the vehicle. Later, Lakeside Imports re-acquired the Toyota as a trade-in on Mr. DiCarlo’s purchase of a new vehicle.[2] A-Quality purchased the Toyota from Lakeside Imports, one day before its resale to Ms. Alexander.
Importantly, Lakeside Imports knew that A-Quality was not in the business of buying used cars for its own use but rather for resale to others. Neither at the time of its sale of the car to A-Quality, nor afterwards, did Lakeside Imports provide a revised warning label to A-Quality. Thus, at the time of its purchase from A-Quality, Ms. Alexander’s vehicle contained the original, unrevised warning label attached to the sun visor some years earlier by the manufacturer. No other warning was given to Ms. Alexander from the time of her purchase until her injury. The record, however, discloses a genuine issue of material fact as to whether Lakeside Imports was advised by the manufacturer that a replacement airbag warning label was available to users of 1995 Toyotas during the years of Mr. DiCarlo’s use, and Lakeside Imports servicing, of the vehicle. There is, however, no factual question that a revised replacement warning was available from, and in use by, the manufacturer.
^Nevertheless, while Lakeside Imports denies having received communications from the manufacturer about the availability of replacement warnings, there is considerable evidence of correspondence from the manufacturer to its authorized dealerships, such as Lakeside Imports, about the replacement warning and the use of the
revised warning label. Notably, correspondence from the manufacturer made it clear that it would not take broad steps to inform all future, foreseeable, or prospective Toyota users of the replacement warning. Rather, Toyota indicated that its notification of the replacement warning would be directed to three categories of recipients: 1) then-current initial purchasers or lessees of older model vehicles (such as Mr. DiCarlo); 2) its authorized dealerships (such as Lakeside Imports); and, 3) owners of newer model cars as required by NHTSA. It is undisputed that Ms. Alexander did not know of the replacement warning as Mr. DiCarlo did not attach the replacement decal in the car.[3] Also, there has been no assertion that A-Quality, in its role as “seller,” had knowledge of the replacement warning.
II
As we stated at the outset, we find as a matter of law that under the factual circumstances of this case Lakeside Imports stood in a relationship with Ms. Alexander so as to create a legally recognized obligation of conduct on its part for Ms. Alexander’s benefit. The duty is that of a seller of a vehicle (and its component parts), who knows, or reasonably should know, that the manufacturer’s | ^warning is inadequate, to warn reasonably foreseeable users at the time of sale or delivery of the danger inherent in the use of the product or instruct such users in the proper use of the product to which the average consumer would not be aware.
*673 We note, however, that the term “seller” as expressed herein does not extend to any seller or vendor. Cf. La. Civil Code art. 2439 (“Sale is a contract whereby a person transfers ownership of a thing to another for a price in money.”) Rather, the “seller” with a duty under these circumstances is “a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.” La. R.S. 9:2800.53(2) (emphasis added).
The district court concluded that Lakeside Imports owed no duty to Ms. Alexander because it did not sell the car to Ms. Alexander, and, thus, was not in “privity” with her. We find this conclusion to be legally erroneous. Specifically, the law provides that a commercial seller’s duty to warn can extend beyond the scope of an immediate purchaser. “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” La. Civil Code art. 2315. Indeed, the Supreme Court has concluded that “Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without [contractual] privity to recover, whether the suit be strictly in tort or upon implied warranty.” Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 90, 262 So.2d 377, 381 (La.1972). Similarly, this Court has observed that “a contract is not required for recovery in tort or redhibition.” Touro Infirmary v. Sizeler Architects, 04-0634, p. 11 (La.App. 4 Cir. 3/23/05), 900 So.2d 200, 206. Because failure to warn falls under the category of negligence, the | question of liability falls under the duty-risk analysis. Jimenez v. Omni Royal Orleans Hotel, 10-1647, p. 7 (La.App. 4 Cir. 5/18/11), 66 So.3d 528, 532, reh’g denied (7/20/11), writ denied, 11-1800 (La.10/21/11), 73 So.3d 385; see Posecai v. Wal-Mart Stores, Inc., 99-1222, p. 4 (La.11/30/99), 752 So.2d 762, 765.
The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under La. Civil Code art. 2315. Lemann v. Essen Lane Daquiris, Inc., 05-1095, p. 7 (La.3/10/06), 923 So.2d 627, 632-633. The duty-risk analysis requires proof by the plaintiff of five separate elements: 1) the defendant had a duty to conform his conduct to a specific standard; 2) the defendant’s conduct failed to conform to the appropriate standard; 3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries; 4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and 5) actual damages. Id., p. 7, 923 So.2d at 633. A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Id., p. 8, 923 So.2d at 633. A duty represents a legally enforceable obligation to conform to a particular standard of conduct. Byers v. Edmondson, 97-831 (La.App. 1 Cir. 5/15/98), 712 So.2d 681, 687.[4]
Whether a duty is owed is a question of law.[5] Peterson v. Gibraltar Savings and Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204. In de *674 ciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). In determining whether a duty exists, we consider various moral, social, and economic factors. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229, 233; Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1161 (La.1988). Included in these considerations are victim fault, the ease of association between the plaintiffs harm and the defendant’s conduct, and the nature of the defendant’s activity. Id.
We easily associate the conduct of Lakeside Imports with Ms. Alexander’s harm. Having said this, we do not mean to preempt the fact-finder’s preeminent role in determining causation. Nevertheless, having studied the evidence in the record before us, we are satisfied that adequate airbag warnings are easily associated with increased safety and decreased injuries. We easily associate the seller’s failure to warn with the harm suffered by a foreseeable user when the seller knew or should have known that the manufacturer did not furnish the user with a warning and at the same time the seller failed to adequately warn his immediate buyer (such as A-Quality) of the danger. We also find that Ms. Alexander was such a foreseeable user. It is not contested that Ms. Alexander was the first person to whom A-Quality re-sold the vehicle. Indeed, the record indicates that A-Quality purchased the vehicle from Lakeside Imports — who had been servicing the vehicle — only one day prior to its sale to Ms. Alexander. She was, therefore neither a remote nor a distant-in-time purchaser. Further, her action in purchasing a passenger vehicle for her personal use was quite ordinary.
Lakeside Imports is not only in the business of selling both new and used cars, but also in servicing cars. Indeed, Ms. Alexander’s Toyota had been at one time regularly serviced by Lakeside Imports. While it is true that Lakeside Imports had no involvement with the actual mechanism of the harm suffered by Ms. | ¡^Alexander, one aspect of the business of servicing vehicles is the promotion of safe transportation.[6] Thus, while Lakeside Import’s duty to warn may not be paramount to others’ duties to warn (such as a manufacturer’s or an immediate seller’s), it nevertheless shares in the responsibility owed to foreseeable ultimate users.
Ill
Turning now to the summary judgment under review, we note that the record before us discloses several genuine issues of material fact.[7] Specifically, we *675 find that there is a genuine issue of material fact as to whether Lakeside Imports actually knew or should have known that the original manufacturer’s warning was inadequate. Moreover, we also find that there is a genuine issue of material fact as to whether Lakeside Imports knew, or should have known, that the manufacturer did not intend to distribute the revised warning label to all foreseeable users, but rather to then-current initial purchasers or lessees of older model vehicles, authorized dealerships, and owners of newer models vehicles. Likewise, we also find that there is a genuine issue of material fact as to whether Lakeside Imports knew, or should have known, that the manufacturer was relying on the current initial purchasers or lessees of older model vehicles to attach the revised warning | inlabel to their respective vehicles for the benefit of foreseeable future users. The record, therefore, indicates that this matter is not ripe for summary judgment.
IV
While it is uncontested that neither the manufacturer nor Lakeside Imports were required by the NHTSA to install the revised warning labels in vehicles that were manufactured prior to February 25, 1997, it is nevertheless true that the regulatory actions of the NHTSA are not per se dispositive of the existence, vel non, of legal duties arising under Article 2315. We, thus, emphasize that there are sufficient material facts in dispute to preclude summarily finding that Lakeside Imports owed no duty to Ms. Alexander. Whether the original warning label in the car was adequate (breach of duty), or whether the original warning label, if subsequently found to be inadequate, was a cause-in-fact of Ms. Alexander’s injuries (causation) are both factual issues reserved to the trier of fact. See Mundy v. Dep’t of Health & Human Res., 620 So.2d 811, 813 (La.1993). Accordingly, our opinion herein must not be construed as any form of commentary on these issues.
Of course, even determining that Lakeside Imports had a duty to warn Ms. Alexander does not imply that it is liable to Ms. Alexander for her injuries. Nevertheless, when a warning has been deemed inadequate, “the plaintiff who actually read the warning but did not understand it can plausibly claim that an adequate warning would have protected her.” Dan B. Dobbs, The Law of Torts, § 367 (2000). An “adequate warning” is defined by Louisiana statute as a “warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such aj^manner as to avoid the damage for which the claim is made.” La. R.S. 9:2800.53(9). Therefore, while the airbag may not be unreasonably dangerous to an average-statured person, a short-statured person provided with an adequate warning may handle the vehicle in a manner that could decrease the risk of injury. There can be no doubt that the NHTSA concluded that the original warning was lacking, and we would not deprive *676 Ms. Alexander of her opportunity to persuade a trier of fact that the warning label affixed to her vehicle at the time of the accident was inadequate as a matter of fact and contributed to the cause of her damages. Nevertheless, this case does not rise and fall upon replacing the label in the car, as there are many ways to discharge a duty to warn. If the fact-finder concludes that the original warning label was inadequate, there is nevertheless a genuine issue of material fact as to whether Lakeside Imports actually knew or should have known of the inadequacy. We, therefore, believe it pertinent to underscore that we are not making any decision in regards to issues of material fact, breach, or causation. We are deciding a single, though important, aspect of the negligence action. The burden still falls on Ms. Alexander to prove the remaining elements of her negligence action in the district court below.
DECREE
Accordingly, we reverse the district court’s granting of Lakeside Import’s motion for summary judgment and the subsequent dismissal with prejudice of Ms. Alexander’s claims against Lakeside Imports. We remand this matter to the district court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED
LOMBARD, J., dissents.
LANDRIEU, J., dissents with reasons.
LOMBARD, J., dissents.
| Rather than determine whether summary judgment is appropriate under the specific circumstances of this case, the majority has created an expansive duty to warn a third-party purchaser of potential danger associated with the airbag. Accordingly, I respectfully dissent.

. For our purposes we adopt the following definition of a "seller”: "a person or entity *671 who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.” La. R.S. 9:2800.53(2) (emphasis added).

. The record indicates that Mr. DiCarlo wanted a higher amount for his trade-in of the Toyota than Lakeside was willing to give, so Lakeside contacted A-Quality to see if A-Quality was interested in purchasing the Corolla at Mr. DiCarlo's requested price. A-Quality agreed to the amount, so Lakeside purchased the car from Mr. DiCarlo and then immediately sold it to A-Quality.

. By noting this fact, we do not imply that Mr. DiCarlo had any duty to do so. See n. 1, ante.

. The Supreme Court has explained that the duty-risk approach is helpful in cases where the only issue under review is whether the defendant stands in any relationship to the plaintiff so as to create any legally recognized obligation of conduct for the plaintiff’s benefit. Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155 (La.1988).

. Conversely, whether a defendant breached a duty and whether that breach was a cause in fact of the plaintiff’s injuries are faction questions to be determined by the fact-finder. Benjamin v. Housing Authority of New Orleans, 04-1058, p. 6 (La. 12/1/04), 893 So.2d 1, 5.

. Cf. Hunt v. Ford Motor Co., 341 So.2d 614, 619 (La.App. 2d Cir.1977) (holding that when "a manufacturing defect causes an accident and the dealer had prior notice of difficulties apparently relating to the defect with an opportunity to discover and correct the defect, in order to avoid liability for damages occasioned by the defect the dealer has the burden of showing he made reasonable and adequate efforts to discover the source of the difficulties and that the defect could not be discovered in spite of such efforts.”)

. It is axiomatic that appellate courts review the granting of a summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case.” La. C.C.P. art. 966 E. "[A] motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). "The burden *675 of proof remains with the movant.” La. C.C.P. art. 966 C(2). "However, if the mov-ant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” Id. "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.