# IN THE SUPREME COURT OF TEXAS

No. 20-0979

AMAZON.COM INCORPORATED, APPELLANT,

v.

MORGAN MCMILLAN, INDIVIDUALLY AND AS NEXT OF FRIEND OF E.G., A MINOR,
APPELLEE

ON CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JUSTICE BOYD, joined by JUSTICE DEVINE, dissenting.

The Texas Products Liability Act governs the rights and liabilities of a product "seller" in Texas. TEX. CIV. PRAC. & REM. CODE §§ 82.001–.008. Generally, the Act protects product sellers in ways the common law does not. A seller that did not manufacture the product, for example, is not strictly liable for harm caused by the product unless a statutory exception applies. *Id.* § 82.003(a). And a seller that is sued for a product defect is entitled to indemnification from the product's manufacturer unless the manufacturer proves that the loss was "caused by the seller's negligence, intentional misconduct, or other act or omission." *Id.* § 82.002(a).

The issue in this case is whether Amazon.com qualifies as a "seller" under the Act when it "does not hold title to the product but controls the process of the transaction and delivery through Amazon's Fulfillment by Amazon program." *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 203 (5th Cir. 2020). We need not guess at the meaning of the term "seller" to answer that question,

because the Act expressly defines that term. TEX. CIV. PRAC. & REM. CODE § 82.001(3); *see Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) ("Courts must adhere to legislative definitions of terms when they are supplied.").[1] Even if the term has a different meaning under the constitution or the common law, or even a different common, ordinary meaning, we must apply the meaning the statute expressly provides. *See, e.g.*, *Powell v. City of Houston*, No. 19-0689, 2021 WL 2273976, at *13 (Tex. June 4, 2021) (holding statute gives the word "zoning" a meaning different from its common, ordinary meaning); *Youngkin*, 546 S.W.3d at 681 (applying statutory definition of "right to petition" instead of narrower constitutional meaning); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) ("We do not look to the ordinary, or commonly understood, meaning of the term because the legislature has supplied its own definition, which we are bound to follow.").

The Act defines "seller" to mean a "person who is engaged in the business of *distributing or otherwise placing*, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM. CODE § 82.001(3) (emphasis added). This definition must govern our answer to the question this case presents. But the Act does not define the terms used in the definition; it does not explain what it means by

---

[1] *See also* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("[W]e must adhere to statutory definitions."); *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) ("[W]e will not ignore the statute's use of a term that carries a 'particular meaning.'"); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("If a statute . . . assigns a particular meaning to a term, we are bound by the statutory usage."); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition . . . ."); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("But if a statute defines a term, a court is bound to construe that term by its statutory definition only.").

"distributing" or "otherwise placing" a product into the stream of commerce. Because the Act does not define these terms, we must apply their common, ordinary meaning. *Entergy Gulf States*, 282 S.W.3d at 437 ("Since the words contained within the definition are not themselves defined, we apply a meaning that is consistent with the common understanding of those terms.").[2]

To determine the common, ordinary meaning of the terms "distributing" or "placing," we look first to dictionary definitions and then to how the terms were used in other statutes, court decisions, and similar authorities. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 35. To "distribute" something commonly means to "deliver," "spread out," or "disperse." *Distribute*, BLACK'S LAW DICTIONARY (11th ed. 2019). To "place" something commonly means to "put" it, "as if in a particular place or position," to "direct [it] to a desired spot," or to "distribute [it] in an orderly manner." *Place*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/place (last visited June 17, 2021).[3]

---

[2] *See also Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020) ("Unless the statute provides a separate definition, we presume that the legislature meant to use the ordinary meaning of a word . . . ."); *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) ("Because the statute and the rule do not define these key terms, we must apply their common, ordinary meaning unless a contrary meaning is apparent from the statute's language.").

[3] We must construe "distribute" and "place" within their statutory context, which includes the requirement that the person be "engaged in the business" of such conduct and that the distributing and placing be in "the stream of commerce." *See Sunstate Equip.*, 601 S.W.3d at 690 ("[W]e start with [the statute's] text and the plain meaning of its words *construed within the statute as a whole*." (emphasis added)). We have previously held that a person is "engaged in the business of" selling a product if the person "take[s] part in" or "embark[s] on" that endeavor as a "commercial enterprise" or "employment" for "livelihood or gain," unless providing the product is merely "incidental to selling services." *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 37, 40 (Tex. 2016). The "stream of commerce" is a metaphor that refers to the "movement of goods from manufacturers through distributors to consumers" within "the general marketplace." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality op.); *Stream-of-Commerce Theory*, BLACK'S LAW DICTIONARY (11th ed. 2019); *cf. Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978) (holding that tire "provided for the industrial purpose of testing other tires" that failed in a "testing laboratory" was "neither manufactured for market nor placed in the stream of commerce").

Applying the Act's definition and giving its terms these common, ordinary meanings, Amazon.com is unquestionably a seller when a customer purchases a third party's product through the Fulfillment by Amazon (FBA) program. A third party that chooses to sell its products on Amazon.com's website and utilize the FBA program physically provides the product to Amazon.com. Amazon.com then stores the product in one of its "fulfillment centers." *McMillan*, 983 F.3d at 197. From that point on, Amazon.com is the "sole channel of communication" between the third party and the ultimate consumer. *Id*. at 200. Amazon.com agrees to "conduct merchandising and promote" the product, list it on its website, and include it in a consumer-rating program. *Id*. at 197. When a consumer purchases the product from Amazon.com's website, Amazon.com physically retrieves the product from its fulfillment center, packages it, applies the necessary shipping labels, and delivers it to the buyer, using either its own delivery system and vehicles or (as happened here) a third-party delivery service like UPS. *Id.* at 200. Amazon.com receives the buyer's payment through its website, deducts a portion to cover its service fee, and then forwards the remaining funds to the third party. *Id.* at 197. Amazon.com determines the amount of its fee and retains the right to withhold the third party's funds. *Id.* at 200. A buyer who decides to return the product must return it to Amazon.com, not to the third party, and Amazon.com will physically receive the product, issue a refund to the customer, and then require reimbursement from the third party. *Id.* at 197.

In short, Amazon.com does not merely transport the product on behalf of its seller, like a mail carrier or delivery service might do. Instead, Amazon.com completely "controls" the entire "process of the transaction" as well as the "delivery" of the product to the ultimate consumer. *Id.*

4

at 203. Whatever it may mean to be "engaged in the business of *distributing*" a product, the Act's definition of "seller" extends even more broadly to include the business of "*otherwise placing*" the product in the stream of commerce, "for *any* commercial purpose." TEX. CIV. PRAC. & REM. CODE § 82.001(3) (emphases added). Amazon.com meets this definition under the common, ordinary meaning of those terms.

The Court agrees that Amazon.com "provide[s] many of the services traditionally performed by distributors and retailers, enabling merchants from all over the world to reach consumers directly." *Ante* at ___. But the Court holds that Amazon.com is not a "seller" when it sells a product through its FBA program because it never holds title to the product. *Ante* at ___. According to the Court, a party can qualify as a seller only if the party holds title to the product. *Ante* at ___.[4]

The Court's focus on holding title is a helpful development in the common law. It draws a bright line on which courts and parties can easily rely to predict and confirm whether a particular party is a seller in a particular transaction. But it is a new line we have never drawn before. We are not asked in this case to decide how the common law should be developed to clarify or improve the concept of a "seller." Instead, we must decide how to properly construe the Act's definition of "seller." And to do that, we must determine and apply the common, ordinary meaning of "distributing" and "placing" as of 1993, when the statutory definition of "seller" became law. *See*

---

[4] More specifically, the Court holds that to qualify as a seller in an "ordinary sale," the party must hold title and relinquish title as part of the transaction, and to qualify as a seller in a "non-sale commercial transaction," the party must hold but need not relinquish title. *Ante* at ___. In either situation, according to the Court, the party must at least hold title at the time of the transaction.

*VIA Metro. Transit v. Meck*, 620 S.W.3d 356, 369 & n.15 (Tex. 2020) (explaining that courts must apply undefined terms' "original public meaning" at the time they were enacted). Even if, as the Court suggests, the Act incorporates the common-law meaning of the statutory terms "distributing or otherwise placing," *ante* at ___, it does not thereby authorize courts to judicially amend the statute by developing the terms' common-law meaning. "[E]very statute's meaning is fixed at the time of enactment." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018). What the terms have come to mean in the intervening decades, or what we may declare them to mean today, is irrelevant to the proper construction of a statute enacted in 1993.

The common-law concept of a "seller" in 1993 evolved from section 402A of the Restatement (Second) of Torts, which imposed products liability on "[o]ne who sells any product" if "the seller is engaged in the business of selling such a product." RESTATEMENT (SECOND) OF TORTS § 402A (AM. L. INST. 1965). The comment to this section explained that those who enter "into the business of *supplying*" products qualify as sellers because they take on a "special responsibility for the safety of the public." *Id.* § 402A cmt. f (emphasis added). When we adopted section 402A in *McKisson v. Sales Affiliates, Inc.*, we held that "[o]ne who *delivers* an advertising sample to another with the expectation of profiting therefrom through future sales is in the same position as one who sells the product." 416 S.W.2d 787, 792 (Tex. 1967) (emphasis added). In *Rourke v. Garza*, we said that products liability applies to one who "is engaged in the business of *introducing* products into the channels of commerce." 530 S.W.2d 794, 800 (Tex. 1975) (emphasis added), *abrogated by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). And in *Armstrong Rubber Co. v. Urquidez*, we explained that "it is not necessary that the defendant actually sell the

6

product, but only that he be engaged in the business of *introducing* the product into channels of commerce." 570 S.W.2d at 375 (emphasis added).

In short, as of 1993, we recognized that the "application of strict liability in tort does not depend upon a sale of the product;" instead, the product "must be *released in some manner* to the consuming public." *Id.* at 376 (emphasis added). Around the country, other courts applied the term "seller" in a similar manner. *See, e.g.*, *Torres v. Goodyear Tire & Rubber Co.*, 786 P.2d 939, 943 (Ariz. 1990) (holding that a trademark licensor may be strictly liable as a seller if it "places" the products in the stream of commerce); *Gonser v. Decker*, 814 P.2d 1056, 1057 (Okla. Civ. App. 1991) (mem. op.) (explaining that products liability extends to "suppliers" who "inject" a product into the stream of commerce).

The Court notes today that in each of our decisions, the party that qualified as a seller held title to the product when the transaction occurred. *Ante* at ___. Although that may be true, we never relied on, or even mentioned, that fact in any of our decisions. Instead, we relied only on the fact that the party was responsible for physically supplying, delivering, introducing, or releasing the product into the stream of commerce. Even after 1993, when we held that an auctioneer was not a seller despite the fact that it held title to the product, we relied not on whether the auctioneer held title, but on the fact that an auctioneer merely "*facilitates*" the stream of commerce and only incidentally "*place[s]*" products into it. *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 402 (Tex. 2008). We explained that the law should not treat those "that play only an incidental role in a product's placement" as sellers, because they "are rarely in a position to deter future injuries by changing a product's design or warnings." *Id.* at 404.

7

Like the Court does today, other courts around the country have recently held that a party must hold title to qualify as a seller or as one who distributes or places a product into the stream of commerce.[5] Others, however, have rejected that new, bright-line approach and held that a party that is responsible for physically conveying or transferring products within the sales process can constitute a seller that distributes or places the product even if the party never holds title.[6] Were we required to take sides on that common-law debate today, I would likely agree with the Court's

---

[5] *See, e.g.*, *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 835 F. App'x 213, 216 (9th Cir. 2020) (mem. op.) (holding that fact that Amazon.com never took title to product "supports the conclusion that it" was not a seller); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019) (holding that "shippers, warehousemen, brokers, marketers, auctioneers, and other bailees or consignees, who do not take title to property during the course of a distribution but rather render services to facilitate that distribution or sale, are not sellers"); *Smith v. Alza Corp.*, 948 A.2d 686, 693–94 (N.J. Super. Ct. App. Div. 2008) (holding party that never obtained title to product it packaged, labeled, and shipped was not a seller); *Antone v. Greater Ariz. Auto Auction*, 155 P.3d 1074, 1079 (Ariz. Ct. App. 2007) (holding auctioneer that "never takes ownership or title . . . does not exercise such a degree of control over the vehicles" to justify treatment as a seller).

[6] *See Oberdorf v. Amazon.com Inc.*, 930 F.3d 136, 148 (3d Cir. 2019) (holding that "a participant in the sales process can be held strictly liable for injuries resulting from defective products, even if the participant does not take title or possession of those products"), *reh'g en banc granted, opinion vacated*, 936 F.3d 182 (3d Cir. 2019), *question certified to Pa. Supreme Court*, *Oberdorf v. Amazon.com Inc.*, 818 F. App'x 138, 143 (3d Cir. 2020), *certified question accepted*, 237 A.3d 394 (Pa. 2020); *Kirby v. Smith & Nephew, Inc.*, No. 3:15-CV-2543-L, 2017 WL 661373, at *7 n.2 (N.D. Tex. Feb. 17, 2017) (mem. op.) (holding section 81.001(3), defining the term "seller," "does not require title to, or ownership interest in, the products, but only that a defendant 'distribute or place' the product in the stream of commerce"); *Alexander v. Toyota Motor Sales, U.S.A.*, 110 So. 3d 668, 673 (La. Ct. App. 2013) (holding seller is a person in the business of "conveying title to or possession of a product to another person or entity in exchange for anything of value"), *rev'd on other grounds*, 123 So. 3d 712 (La. 2013); *see also* Margaret E. Dillaway, *The New "Web-Stream" of Commerce: Amazon and the Necessity of Strict Products Liability for Online Marketplaces*, 74 VAND. L. REV. 187, 216 (2021) (arguing that "courts have misguidedly focused on other, alternative definitions of 'seller' that require assumption of title or degree of control over a product—requirements that are absent from the Restatement and applicable case law"); Aaron Doyer, *Who Sells? Testing Amazon.com for Product Defect Liability in Pennsylvania and Beyond*, 28 J.L. & POL'Y 719, 727 (2020) (explaining that "not all states require the taking and passage of title as a prerequisite for liability as a seller"); Robert Sprague, *It's a Jungle Out There: Public Policy Considerations Arising from a Liability-Free Amazon.com*, 60 SANTA CLARA L. REV. 253, 280 (2020) (arguing that in light of the public policy considerations underlying strict products liability, Amazon.com "should be liable for defective products it places into the stream of commerce"); Ryan Bullard, *Out-Teching Products Liability: Reviving Strict Products Liability in an Age of Amazon*, 20 N.C.J.L. & TECH. 181, 211–12 (2019) ("Any requirement for a retailer or distributor to hold title in a defective product in order for it to be subject to strict liability is absent from products liability statutes, from the Restatement and from relevant case law. . . . [T]he plain language of the Restatement and precedent in other jurisdictions supports the assertion that distributors *do* include entities that have not taken title.").

8

possession-of-title requirement, primarily because it draws a bright and logical line that can promote certainty and predictability in the law. But we are not asked to develop the common law today; we are asked to construe a statute that was enacted in 1993. Although we may "presume the legislature was aware of our case law when it enacted a substantially similar definition of 'seller' in the Products Liability Act," *Centerpoint Builders*, 496 S.W.3d at 39 n.5, we may not presume that it was aware of what we would hold twenty-eight years later.

Our task here is simply to determine the common, ordinary meaning of the phrase "distributing or otherwise placing" a product in the stream of commerce, as that phrase was used when section 82.001(3) was enacted in 1993. Because "ordinary citizens should be able to rely on the plain language of a statute to mean what it says," *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999), we must determine its meaning as of the date of its enactment. To the extent our pre-1993 decisions illustrate the phrase's meaning, such that we can assume the legislature intended to incorporate that meaning, to "distribute or otherwise place" a product into the stream of commerce meant to physically convey or transfer it within the sales process. To retroactively impute a new common-law possession-of-title requirement is to improperly "judicially amend the statute to add an exception not implicitly contained in the language of the statute." *Id*. at 867.

Applying the statute's definition and the common, ordinary meaning of its language when the statute was enacted, I would answer the Fifth Circuit's certified question by holding that Amazon.com is a seller under section 82.001(3) when it "controls the process of the transaction

9

and delivery" of a product through its FBA program, regardless of whether it ever holds title to the product. Because the Court holds otherwise, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 25, 2021