# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 18, 2020

Lyle W. Cayce
Clerk

No. 20-20108

---

Morgan McMillan, *individually and as next friend of* E.G.*, a minor child*,

*Plaintiff—Appellee*,

*versus*

Amazon.com, Incorporated,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2242

---

Before Wiener, Costa, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

When Amazon allows third parties to sell products on its website, is Amazon "placing" products into the stream of commerce or merely "facilitating" the stream? If the former, then Amazon is a "seller" under Texas products-liability law and potentially liable for injuries caused by unsafe products sold on its website.[1] But if Amazon only *facilitates* the stream

---

[1] *New Tex. Auto Auction Servs., L.P. v. Gomez de Hernandez*, 249 S.W.3d 400, 402 (Tex. 2008).

when it hosts third-party vendors on its platform, then it is not a seller, meaning injured consumers cannot sue for alleged product defects.[2]

This Texas tort case has potentially sweeping implications. Online retailers like Amazon have transformed how goods are bought and sold. But when safety disputes arise, are e-commerce retailers like virtual big-box stores (who would be strictly liable for injuries caused by products sold through their own websites) or more akin to an online flea market (a mere information conduit that connects buyers and sellers)? As often happens, technological innovation has outpaced legal adaptation. None of Texas's bricks-and-mortar precedents has determined whether an e-tailer like Amazon should be deemed a "seller" when vendors' products turn out to be unsafe. Given the dearth of on-point caselaw and the significant potential consequences of holding online marketplaces responsible for third-party sellers' faulty products, we certify this important question to the only court that can adjudicate it with finality: the Supreme Court of Texas.

I

Amazon is a global e-commerce behemoth—"the world's largest retailer."[3] Its massive website, Amazon.com, "makes up at least 46 percent of the online retail marketplace, selling more than its next twelve online competitors combined."[4] The migration of consumer spending online, further compounded by the COVID-19 pandemic, has enabled the once modest online bookstore (initially dubbed "Cadabra," as in "abracadabra")

---

[2] *See id.*

[3] *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018).

[4] *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 144 (4th Cir. 2019) (Motz, J., concurring).

to make many traditional retailers disappear.[5] And while Amazon sells many products itself, most of the items sold on Amazon.com are listed by millions of third-party merchants. Such sales represent a fast-growing part of Amazon's retail empire, and a lucrative one.

When purchasing products on Amazon.com, customers must agree to Amazon's "Conditions of Use," which specify that both Amazon and third parties sell products on the website. The conditions inform customers that Amazon isn't responsible for third-party product descriptions nor does Amazon provide any warranties for those products.

When third parties want to sell their products on Amazon.com, they must create an account and agree to the "Amazon Services Business Solutions Agreement" (BSA). The BSA informs third-party sellers that they must ensure their products "comply with all applicable laws." It also states that the third parties will provide the product description on Amazon.com. For its part, Amazon promises third parties that it "will enable" the listing of their products on its website, "conduct merchandising and promote" the products, and "use mechanisms that rate[] or allow shoppers to rate" the products.

When a customer is looking at a third party's product, the website identifies the seller in the "sold by" line next to the price. The order confirmation page also identifies the seller. After a shopper buys a third-party product, Amazon receives all sales proceeds and has "exclusive rights to do so." Amazon then remits the sale proceeds to the third party, retaining a service fee.

---

[5] Founder Jeff Bezos also considered naming his company Relentless. To this day, Relentless.com redirects to Amazon.com.

No. 20-20108

For shipping, Amazon offers two options to third parties—they can ship the item themselves or use the "Fulfillment by Amazon" program (FBA). If using FBA, third parties must pay Amazon a service fee to store and ship their products. Third parties can use FBA for products listed on Amazon.com or products sold through other websites or stores. When a transaction takes place on Amazon.com and the third party is using FBA, Amazon will retrieve the product from one of its fulfillment centers and then ship it to the buyer.

If a buyer wants to return a product sold and shipped through FBA, the buyer sends the product back to Amazon. Amazon accepts the item and refunds the customer. The third party must then reimburse Amazon for the refund. When the third-party seller doesn't use FBA, it must "accept and process cancellations, returns, refunds, and adjustments" on its own.

II

In this case, Morgan McMillan's husband purchased a remote control on Amazon.com. The listed seller was "USA Shopping 7693." About a year later, McMillan's nineteen-month-old daughter swallowed the remote control's battery. A doctor surgically removed the battery, and McMillan alleges that the "battery's caustic fluid from its electric charge ha[s] caused severe, permanent, and irreversible damage to [the child's] esophagus."

After McMillan notified Amazon of the incident, Amazon identified "USA Shopping 7693" as an account belonging to Hu Xi Jie, who sold products on Amazon.com using FBA. Amazon attempted to contact Hu Xi Jie but never received a response. Amazon suspended Hu Xi Jie's account, and the remote control is no longer available on Amazon.com.

McMillan sued Amazon and Hu Xi Jie, alleging five causes of action: (1) strict liability for design defect; (2) strict liability for marketing defect; (3) breach of implied warranty; (4) negligence; and (5) gross negligence.

No. 20-20108

McMillan attempted to serve Hu Xi Jie—either a Chinese individual or entity (no one has been able to confirm)—through the Texas Secretary of State. Hu Xi Jie failed to answer or otherwise make an appearance in the case.

The litigation proceeded, and after discovery ended, Amazon moved for summary judgment. Amazon argued that it was not liable for any of the claims because under Texas law, it wasn't the remote control's "seller." Amazon also argued that the Communications Decency Act barred McMillan's claims.

The district court first tackled a jurisdictional issue. Although nonmanufacturing sellers are typically not liable for defective products, the Texas Products Liability Act provides an exception when "the manufacturer of the product is . . . not subject to the jurisdiction of the court."[6] The district court found that McMillan followed the Act's prescribed process for serving nonresident manufacturers and therefore shifted the burden to "the seller" to secure personal jurisdiction over Hu Xi Jie.[7] So, the court reasoned, "to determine the jurisdictional issue," it had to decide if Amazon was a "seller" under Texas law.

The district court answered "yes" because Amazon "was an integral component in the chain of distribution" by enabling the sale, having physical possession of the product, delivering the product, earning money from the sale, and exercising control over the transaction by retaining certain rights, such as withholding payment to the third-party seller. Thus, the district court denied summary judgment to Amazon on the "seller" point, concluding that

---

[6] TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(7)(B).

[7] *See id.* at 82.003(c).

No. 20-20108

"Amazon was engaged in the business of placing the product in the stream of commerce."[8]

Agreeing that there was "substantial ground for difference of opinion" on "the scope of 'seller' liability under Texas products-liability law," the parties jointly moved to certify for immediate appeal the district court's order on this "controlling question of law." The district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). And we granted Amazon's permission to appeal.

## III

The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(3). We have jurisdiction to conduct an interlocutory review of the district court's denial of summary judgment under 28 U.S.C. § 1292(b).

We review summary judgment de novo, but the scope of interlocutory review is limited.[9] "This court's appellate jurisdiction under § 1292(b) extends only to interlocutory orders that involve a 'controlling question of law'"—here, whether Amazon is a "seller" under Texas tort law.[10] Our review "is limited to th[at] narrow question."[11]

---

[8] The district court also ruled that "[i]nsofar as Plaintiff's claims might relate to Amazon's editorial control over the product detail page and failure to provide an adequate warning on the page, those claims are barred by the [Communications Decency Act]." The district court granted summary judgment to Amazon on those claims but denied it "[a]s to Plaintiff's claims that relate only to Amazon's involvement in the sales process of third-party products."

[9] *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004).

[10] *Id.*

[11] *Id.*

No. 20-20108

IV

The Texas Products Liability Act defines a "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof."[12] The Texas Legislature "chose to define 'seller'. . . just as [the Texas Supreme Court has] construed the term for strict-liability purposes."[13]

No Texas court has yet decided whether an online retailer like Amazon is a "seller" under Texas products-liability law. Ordinarily, we would "make an *Erie* guess as to what the Texas Supreme Court would most likely decide," mindful that our task is "to predict state law, not to create or modify it."[14]

The parties and two amici, Public Justice and the United States Chamber of Commerce, focus on Amazon's control over the transaction and offer competing analogies drawn from caselaw. But, as discussed next, the available precedent does not yield an airtight answer.

The Supreme Court of Texas has laid out various principles that inform "seller" status. First, the Court has distinguished between "those who *place* products in the stream of commerce" and those "who *facilitate*[] the stream."[15] For the former category (the placers)—the entity must be in

---

[12] TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(3).

[13] *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 39 n.5 (Tex. 2016).

[14] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (cleaned up).

[15] *New Tex. Auto*, 249 S.W.3d at 402.

the business of selling.[16] Placers need not sell products; "releas[ing] [them] in some manner to the consuming public" suffices.[17] The latter category (the facilitators) encompasses entities that are "'engaged' in product sales" but do not themselves sell the products.[18] Facilitators can also be those who introduce "a product to a crowd" like "an auctioneer or an emcee."[19] Facilitators include entities like "[a]n advertising agency that provides copy, a newspaper that distributes circulars, an internet provider that lists store locations, and a trucking business that makes deliveries."[20]

Another principle from Texas caselaw is that "service providers" can also be "sellers."[21] But a service provider "is not 'engaged in the business of' selling a product if providing that product is incidental to selling services."[22] For example, a hairdresser is not typically a seller of hair product:

> When the client walks out of the salon, she has shorter hair, but she also has a head full of hair product. The price of the haircut will inevitably include the cost of the product that was used. Still, a hairdresser is in the business of selling haircuts, not selling handfuls of mousse. One does not go to the hair salon to

---

[16] *Id.* at 406.

[17] *PS Invs., L.P. v. S. Instrument & Valve Co., Inc.*, 438 S.W.3d 638, 643 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978). *See also Nazari v. Kohler Co.*, No. 07–50188, 2008 WL 4542850, at *3–4 (5th Cir. Oct. 13, 2008)).

[18] *New Tex. Auto*, 249 S.W.3d at 403.

[19] *Id.* at 405.

[20] *Id.* at 403.

[21] *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 899 (Tex. 2010).

[22] *Centerpoint Builders GP, LLC*, 496 S.W.3d at 40.

acquire a dollop of moisturizing serum and a few spritzes of hairspray.[23]

Federal courts interpreting Texas law have found that when a service provider has "physical possession" or control of the product, that possession or control weighs in favor of seller status.[24] Ultimately, whether a service provider is also a seller "depends upon the specific facts at issue."[25]

The district court reasoned that under these principles, Amazon was a "seller" because "the terms of the BSA indicate that Amazon is integrally involved in and exerts control over the sale of third-party products." Amazon is the "sole channel of communication between customers and vendors." And while Amazon doesn't set the price of third-party products, it sets the fees that it retains and has the right to withhold payments to the third-party seller.

Amazon also requires third parties using FBA to register their products, and Amazon can exclude the registration of any product. The district court noted that its holding would not apply anytime a third party uses FBA, particularly if the third party uses FBA for products it sells on platforms other than Amazon.com.

On appeal, Amazon argues that Texas precedent is clear and that other courts around the country have answered the seller question in Amazon's favor. As explained below, these decisions are not on all fours.

Amazon's chief argument is that it simply facilitates online sales for third-party products, so it's more like an auctioneer or a delivery service, like

---

[23] *Id.* at n.7.

[24] *See Ames v. Ford Motor Co.*, 299 F. Supp. 2d 678, 679 (S.D. Tex. 2003); *Moses v. Zimmer Holdings, Inc.*, No. 06-1350, 2007 WL 3036096, at *5 (S.D. Tex. June 29, 2007).

[25] *Centerpoint Builders GP, LLC*, 496 S.W.3d at 41.

UPS, than a traditional seller. The auctioneer analogy seems off-kilter. In *New Texas Auto Auction Services, L.P. v. Gomez de Hernandez*, the Texas Supreme Court held that an auctioneer was not a "seller" of a vehicle even though he held title to the vehicle that allegedly caused the plaintiff's injury.[26] The Court noted that those deemed "sellers" for strict-liability purposes are "those whose *business* is selling, not everyone who makes an occasional sale" of the product.[27] Relevant to the Court's decision was that "auctioneers are generally not sellers" under the Second Restatement of Torts, and the Third Restatement "specifically exclude[s] auctioneers."[28] The Restatements say nothing about e-commerce retailers like Amazon. And Amazon cannot genuinely contend that it only makes occasional sales or that it is not in the business of selling.

Nor is Amazon like UPS. Amazon claims it is like a delivery service, but it ignores its role in both the commercial transaction *and* delivery of products.[29] Plus, Amazon sometimes uses UPS to deliver products through FBA. Indeed, that is what happened here. If UPS's role in this transaction was to deliver the remote control, Amazon's role was necessarily distinct.

Amazon further argues that Texas law "defines 'sale' in terms of title ownership and transfer." And because Amazon never held or transferred title to the remote control, it contends that it cannot be a "seller." But Texas law does not require a "seller" to hold or transfer title.[30] In fact, Texas law

---

[26] *See* 249 S.W.3d at 405.

[27] *Id.*

[28] *Id.* at 404–05.

[29] While Amazon also claims that it is like Grubhub or Postmates, that comparison doesn't help us because no Texas court has considered the seller status of any food-delivery service.

[30] *See New Texas Auto*, 249 S.W.3d at 403.

doesn't require a sale to take place at all—"introducing the product into channels of commerce is enough."[31]

Amazon is correct that most courts that have considered its seller status have ruled in Amazon's favor. These decisions turned on state laws in Tennessee, Maryland, New York, California, Arizona, New Jersey, and Ohio. But as amicus Public Justice points out, these cases are distinguishable due to dissimilar facts or states' differently worded laws. Some of these states require transfer of title for seller status to attach.[32] Other cases dealt with whether Amazon was a "supplier," not a "seller."[33] Some didn't involve the FBA program, so Amazon was exerting less control over the transaction and distribution.[34]

Just last month, a divided panel of the Ninth Circuit decided that Amazon was not a "seller" under Arizona law.[35] The majority applied Arizona's seven-factor test for determining "seller" status and held that Amazon was more like UPS than a "seller."[36] The dissent noted "the transformation Amazon has wrought on the marketplace" and thus the novelty of the question.[37] The dissent "would certify the questions to the

---

[31] *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996).

[32] *See Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766, 776 (N.D. Ill. 2019); *Erie Ins. Co.*, 925 F.3d at 141–42.

[33] *See Stiner v. Amazon.com, Inc.*, No. 2019-0188, 2020 WL 5822477, at *1 (Ohio Oct. 1, 2020).

[34] *See Fox v. Amazon.com, Inc.*, 930 F.3d 415, 419 (6th Cir. 2019).

[35] *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, No. 19-17149, 2020 WL 6746745, at *1 (9th Cir. Nov. 17, 2020).

[36] *Id.* at *2.

[37] *Id.* at *3 (Clifton, J., dissenting).

Supreme Court of Arizona."[38] The plaintiff in that case, State Farm, has petitioned for rehearing en banc, asking the Ninth Circuit to certify the seller question to the Arizona Supreme Court.

Not all of the decisions have gone Amazon's way. As one district court noted: "While many courts that initially considered the issue found in Amazon's favor, some more recent cases have reached different results, with appeals on a few of these cases still pending. Indeed, this is a developing area of law."[39] About five months ago, the Third Circuit certified the seller question to the Pennsylvania Supreme Court.[40] And just three months ago, a California appellate court found that Amazon was a "seller."[41] The California Supreme Court recently denied Amazon's petition for review.[42]

In sum, the mechanics of Amazon's business model are novel, as is the broad wording of Texas's products-liability statute, and there are no on-point Texas cases to guide us. Cases from other circuits are also unhelpful, given the differences in state laws and facts.

V

Under Texas appellate rules, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the

---

[38] *Id.*

[39] *Phila. Indem. Ins. Co. v. Amazon.com, Inc.*, 425 F. Supp. 3d 158, 163 (E.D.N.Y. 2019).

[40] *Oberdorf v. Amazon.com Inc.*, 818 F. App'x 138 (3d Cir. 2020). The case recently settled before the Pennsylvania Supreme Court answered the question.

[41] *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 462 (2020), *review filed* (Sept. 22, 2020).

[42] *Bolger v. Amazon.com, LLC*, No. S264607 (Cal. November 18, 2020).

No. 20-20108

certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent."[43]

We have articulated three factors to consider in deciding whether to certify a question:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.[44]

This case checks every box.

While certification "is not a panacea for resolution of . . . complex or difficult state law questions," it "may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed."[45] True, certification is wholly discretionary, not obligatory. But federal-to-state certification is prudent when consequential state-law ground is to be plowed, such as defining and delimiting state causes of action. State judiciaries, after all, are partners in our shared duty "to say what the law is"[46]—equal partners, not junior partners.

By any measure, this case hits the certification bull's-eye. It poses a res nova, determinative question of Texas law with far-reaching

---

[43] TEX. R. APP. P. 58.1.

[44] *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018), *certified question accepted* (Oct. 26, 2018), *certified question answered*, 579 S.W.3d 53 (Tex. 2019).

[45] *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010), *certified question accepted*, 51 So. 3d 1 (Oct. 29, 2010), *certified question answered*, 63 So. 3d 955 (La. 2011).

[46] *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

consequences and no instructive state-court guidance. It is a Certification 101 exemplar that calls for cooperative judicial federalism, leaving a weighty ruling on Texas negligence law to those elected to rule on Texas negligence law. As the Third Circuit noted when it certified a similar question to the Pennsylvania Supreme Court, "[e]-commerce businesses present a novel situation, raising several unresolved questions."[47] As things stand—a close question of first impression with scant on-point precedent—any *Erie* guess would involve more divining than discerning. Like the Third Circuit, why speculate when we can certify, letting state-court handiwork supplant federal-court guesswork? This purely legal issue, one guaranteed to recur, "should be answered by the only court that can issue a precedential ruling that will benefit all future litigants, whether in state or federal court."[48]

The parties themselves do not raise certification in their principal briefs. But one amicus does. Public Justice suggests certification because "a state court may be better positioned to decide" the "cutting-edge" issue in the first instance. Amazon pushes back in its reply brief, asserting that this case "does not involve 'determinative questions of Texas law having no controlling [Texas] Supreme Court precedent.'" Amazon echoed this position at oral argument, insisting that "*New Texas Auto* is pretty much on point [and] provides the analysis." As discussed above, we disagree that *New Texas Auto* is as closely analogous as Amazon suggests. Our only guides in this case are a broad statutory definition of "seller" and fact-specific caselaw involving dissimilar marketplace mechanics.

Presumably, this is why the parties, when seeking immediate appeal of the order denying summary judgment to Amazon, jointly told the district

---

[47] *Oberdorf*, 818 F. App'x at 141.

[48] *JCB, Inc. v. Horsburgh & Scott Co.*, 912 F.3d 238, 239 (5th Cir. 2018).

No. 20-20108

court that there was "substantial ground for difference of opinion" as to the scope of "seller" liability under Texas law. Indeed, satisfaction of the standard for interlocutory certification—"a controlling question of law as to which there is substantial ground for difference of opinion [such] that an immediate appeal from the order may materially advance the ultimate termination of the litigation"[49]—aligns with the standard for federal-to-state certification.[50] The same pragmatic factors that counseled certification to us counsel certification to the Texas Supreme Court.

A final note, regarding timing. When certification was raised at oral argument, McMillan's counsel, while conceding "clearly, that's an option," surmised that any ruling from the Texas Supreme Court might take "a couple of years" due to COVID-related delays. Such concern is misplaced. To its immense credit, and for several years in a row, the Supreme Court of Texas has decided every argued case by the end of June. And the coronavirus has failed to slow the Court's pace this Term. To be sure, today's case is a vital and vexing one. But by long tradition, the Texas Supreme Court graciously accepts and prioritizes certified questions from this circuit, and we are confident that the Court's impressive streak of timely clearing its docket will remain unbroken.[51]

## VI

We certify the following question of state law to the Supreme Court of Texas:

> Under Texas products-liability law, is Amazon a "seller" of third-party products sold on Amazon's website when Amazon

---

[49] 28 U.S.C. § 1292(b).

[50] *See* TEX. R. APP. P. 58.1; *Silguero*, 907 F.3d at 332 (5th Cir. 2018).

[51] No pressure.

No. 20-20108

does not hold title to the product but controls the process of the transaction and delivery through Amazon's Fulfillment by Amazon program?

We disclaim any intention or desire that the Court confine its reply to the precise form or scope of the question certified.

QUESTION CERTIFIED.

**A True Copy**
**Certified Dec 18, 2020**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**