# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2022

Lyle W. Cayce
Clerk

No. 21-50322

In the Matter of Gabriel Investment Group, Incorporated *and* Gabriel GP, Incorporated.

*Debtors*,

Gabriel Investment Group, Incorporated,

*Appellant*,

*versus*

Texas Alcoholic Beverage Commission,

*Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-1244

Before King, Costa, and Willett, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

Ever since Prohibition ended in 1933, states have enacted a byzantine patchwork of rules regulating alcohol. It took a global pandemic to ease some of them. During the early coronavirus lockdown, when on-site dining was off limits, the renowned marquee outside El Arroyo, an Austin Tex-Mex hotspot, posted this playful plea: "Now would be a good time to legalize

No. 21-50322

drive-up margaritas." The Texas Legislature obliged, and alcohol-to-go is now legal in the Lone Star State.[1]

More entrenched booze rules, however, remain on the books. For example, retail liquor store sales remain strictly regulated in Texas. One bright-line restriction is that retailers must hold a "package store permit" to sell liquor at retail. And since 1995, Texas law has banned publicly traded corporations from obtaining such a permit. As with many Texas liquor laws, however, there's a carveout for preferred players. Under certain circumstances, a package store organized as a public corporation *can* hold the required permit.

Today's dispute poses a spinoff question: What happens to the permit if an exempt corporation is sold to a non-exempt corporation? For the reasons discussed below, we CERTIFY to the Supreme Court of Texas.

I

A

Texas regulates retail alcohol sales through the Texas Alcoholic Beverage Code.[2] And the Code does not treat all sales the same. Relevant here, it subjects sales of "liquor"—an "alcoholic beverage, other than a malt beverage, containing alcohol in excess of five percent by volume, unless otherwise indicated"[3]—to special rules. Chief among them: liquor retailers

---

[1] *See* Act of May 3, 2021, ch. 6, sec. 5, § 32.155, 2021 Tex. Gen. Laws ____.

[2] *See* TEX. ALCO. BEV. CODE § 1.06 ("Unless otherwise specifically provided by the terms of this code, the . . . sale . . . of alcoholic beverages shall be governed exclusively by the provisions of this code.").

[3] *Id.* § 1.04(5).

must hold a "package store permit."[4] And not all retailers are allowed to hold one.

Before 1995, the door for public corporations to hold package store permits was wide open. The Texas Legislature slammed that door shut, though, with its 1995 Amendments to the Code.[5] Part of the 1995 Amendments, now codified under Section 22.16(a), expressly state that "[a] package store permit may not be owned or held by a public corporation, or by any entity which is directly or indirectly owned or controlled, in whole or in part, by a public corporation, or by any entity which would hold the package store permit for the benefit of a public corporation."[6] What is a public corporation? Under Section 22.16(b), "any corporation or legal entity whose shares or other evidence of ownership are listed on a public stock exchange," or "any corporation or other legal entity in which more than 35 persons hold an ownership interest in the entity."[7]

To enforce the Code, the Legislature turned to the Texas Alcoholic Beverage Commission.[8] The Code charges the Commission with deciding which retailers to "grant" or "refuse" new package store permits, and which retailers get theirs "suspend[ed]" or "cancel[ed]."[9] Sometimes, though, a

---

[4] *Id.* § 22.01.

[5] *See* Act of May 23, 1995, ch. 480, 1995 Tex. Gen. Laws 3202 (codified as amended at Tex. Alco. Bev. Code ch. 22).

[6] Tex. Alco. Bev. Code § 22.16(a).

[7] *Id.* § 22.16(b).

[8] *See id.* § 5.31(a) (charging the Commission to "inspect, supervise, and regulate every phase of the business of . . . selling . . . alcoholic beverages").

[9] *Id.* § 5.35.

public corporation can still get past the Commission—but only if the public corporation is on the right list.

When the Legislature enacted Section 22.16, it expressly excluded two types of public corporations from Section 22.16(a)'s flat prohibition on public corporations owning or controlling package store permits. The first were hotels.[10] The second were corporations that qualified for a so-called "Grandfather Clause." That is, under Section 22.16(f), any corporation:

> (1) which was a public corporation as defined by this section on April 28, 1995; and
>
> (2) which holds a package store permit on April 28, 1995, or which has an application pending for a package store permit on April 28, 1995; and
>
> (3) which has provided to the commission on or before December 31, 1995, a sworn affidavit stating that such corporation satisfies the requirements of Subdivisions (1) and (2).[11]

According to the parties, two—and only two—public corporations qualify for the Grandfather Clause today. One of them is Gabriel Investment Group, Inc.[12]

---

[10] *See id.* § 22.16(d) ("This section shall not apply to a package store located in a hotel.").

[11] *Id.* § 22.16(f).

[12] The other is Sarro Corp., a corporation affiliated with GIG.

No. 21-50322

B

GIG sells liquor in 45 package stores throughout South Texas. Though it traces its historical roots to the late 1940s, GIG itself was not incorporated until April 13, 1995. At inception it had 41 shareholders. On April 25, three days before the magic date in Section 22.16's Grandfather Clause, GIG applied for a package store permit. The Commission issued GIG the permit a few months later, on August 15.

Sometime that December, GIG filed an affidavit with the Commission. In the affidavit, GIG averred that it met the Grandfather Clause's requirements. The Commission marked the affidavit as received on December 22. GIG has since consistently claimed that the Grandfather Clause exempts it from Section 22.16, and the Commission has consistently issued GIG package store permits.

So it went until 2019, when GIG filed for Chapter 11 bankruptcy protection. As part of its reorganization plan, GIG explored selling itself to another public corporation. But questions abounded. If GIG sold all or some of its shares to a public corporation, would GIG remain exempt from Section 22.16 under the Grandfather Clause? If so, could GIG continue to grow its collection of package store permits after the sale?

GIG sued the Commission to find out, requesting declaratory judgment in its favor. The bankruptcy court, after reviewing dueling motions for summary judgment, concluded that the answer to both questions is *no*. GIG now appeals.

No. 21-50322

## II

## A

The bankruptcy court framed GIG's questions aptly: "this would make a great moot court question and law students could spend many hours researching, writing briefs and arguing this and it would be a very close issue." We agree.

On the one hand, GIG insists the answer to both its questions is *yes*. As it correctly notes, Texas courts read statutes by "look[ing] first to the 'plain and common meaning of the statute's words.'"[13] And if the statute is "unambiguous," then "its plain meaning will prevail."[14] Turning to Section 22.16, then, GIG makes a simple argument: the Grandfather Clause expressly provides that "[t]his section"—Section 22.16—"*shall not apply*" to a corporation satisfying its three-prong test;[15] GIG satisfies the Grandfather Clause's three-prong test; therefore, *all of Section 22.16*—to include its prohibition against public-corporation ownership or control, under Section 22.16(a)[16]—does not apply to GIG. Period. Full stop. End of discussion.

GIG's argument certainly has an appeal of simplicity to it. And, as GIG further notes, other sections of the Code reinforce its reading. The Code generally requires package stores to operate on separate premises from

---

[13] *In re J.J.R.S.*, 627 S.W.3d 211, 220 (Tex. 2021) (citation omitted).

[14] *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008).

[15] Tex. Alco. Bev. Code § 22.16(f) (emphasis added).

[16] *Id.* § 22.16(a).

other kinds of businesses.[17] But there is an exception. Under Section 11.50, some holders of package store permits who had them "issued on or before April 1, 1971[] . . . may continue to operate a package store on premises comprising a portion of a building" without the kinds of physical-separation requirements the Code otherwise requires.[18] And in Section 11.50, the Legislature expressly provided that its exception would no longer apply after any "change in ownership," with a limited exception.[19] Section 22.16's Grandfather Clause, though, has no such change-in-ownership exception.[20]

On the other hand, the Commission insists the answer to GIG's two questions is *no*. It argues structure: that 22.16(a)'s public-corporation prohibition is *permit* specific, while the Grandfather Clause is *corporation* specific. Indeed, Section 22.16(a) does expressly provide that "[a] package store *permit* may not be owned or held . . . by any entity which is directly or indirectly owned or controlled, in whole or in part, by a public corporation, or by any entity which would hold the package store permit for the benefit of

---

[17] *See id.* § 22.14(a) ("The premises of a package store shall be completely separated from the premises of other businesses by a solid, opaque wall from floor to ceiling, without connecting doors, shared bathroom facilities, or shared entry foyers.").

[18] *See id.* § 11.50 (providing the other criteria for the exception to apply).

[19] *See id.* § 11.50(a) ("This section does not apply to a permit if a . . . change in ownership has occurred, by majority stock transfer or otherwise, except by devise or descent where the holder of the permit died on or after April 1, 1971."). GIG also points us to another of the Code's provisions, Section 28.04, which also expressly treats changes in ownership as disqualifying under its grandfather clause. *See id.* § 28.04(a) (barring mixed beverage permit renewals "held by a corporation . . . if the commission or administrator finds that legal or beneficial ownership of over 50 percent of the stock of the corporation has changed since the time the original permit was issued").

[20] *See, e.g.*, *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 259 (Tex. 2019) ("That the legislature has spoken clearly when . . . [making exceptions] suggests that silence . . . does not [provide an exception] . . . .").

a public corporation."[21] In contrast, the Grandfather Clause expressly provides that Section 22.16 "shall not apply to a *corporation*" meeting its three-part test.[22] According to the Commission, then, GIG is free to sell its shares to whomever it likes. There's only one catch: If GIG sells its shares to a public corporation, then its package store *permits* become invalid.

Like GIG, the Commission is not without additional support for its argument. It argues that GIG's reading would rewrite the Grandfather Clause, making it read that Section 22.16 "shall not apply to *a permit held by* a corporation" that satisfies its three-prong test;[23] that Section 22.16(d)'s express exemption for "a package store located in a hotel" counsels interpreting changes of ownership for hotels differently than corporations covered only under the Grandfather Clause;[24] and that the Grandfather Clause's statutory "context" belies looking to the Code's other grandfather clauses to support GIG's interpretation.[25]

We are, of course, in the day-to-day business of resolving textual ambiguities; this is our wheelhouse. But, as the bankruptcy court noted, this is no moot-court competition. The stakes here are very real. The Commission represented below that holding for GIG would eviscerate an "important consumer protection." And a transferable license likely has significant economic value. Further, we are not the final arbiters of Texas

---

[21] Tex. Alco. Bev. Code § 22.16(a) (emphasis added).

[22] *Id.* § 22.16(f) (emphasis added).

[23] *See In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014) (orig. proceeding) ("[Courts] cannot rewrite the statute under the guise of interpreting it.").

[24] Tex. Alco. Bev. Code § 22.16(d).

[25] *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication . . . depends on context."); *accord Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 518 S.W.3d 422, 429 (Tex. 2017).

No. 21-50322

law.[26] That role belongs to the Supreme Court of Texas.[27] So the bigger question, at least at this point, is whether we *should* decide GIG's questions.

### B

The Texas Rules of Appellate Procedure provide that "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent."[28]

Our diligent state-court colleagues "are partners in our shared duty 'to say what the law is'—equal partners, not junior partners."[29] And as we recently observed, "federal-to-state certification is prudent when consequential state-law ground is to be plowed."[30]

Specifically, we look to three factors in deciding whether to certify:

1. the closeness of the question and the existence of sufficient sources of state law;

2. the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and

---

[26] *See C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967) ("[S]tate law as announced by the highest court of the State is to be followed. . . . [T]he underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law.").

[27] TEX. CONST. art. V, § 3 ("The Supreme Court shall exercise the judicial power of the state except as otherwise provided in this Constitution. . . . [I]ts determinations shall be *final* except in criminal law matters." (emphasis added)); *see also Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) ("We are not final because we are infallible, but we are infallible only because we are final.").

[28] TEX. R. APP. P. 58.1.

[29] *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

[30] *Id.*

No. 21-50322

3. practical limitations on the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.[31]

"This case checks every box."[32]

The first factor—the closeness of the question and the existence of sufficient sources of state law—weighs in favor of certification. Above, we previewed the primary competing arguments of the parties. Both parties have solid textual and structural support for their positions. Likewise, the Commission does not challenge GIG's contention that the disputes in this case are questions of first impression in *any* court. With no on-point caselaw to guide us, "any *Erie* guess would involve more divining than discerning."[33] But "why speculate when we can certify, letting state-court handiwork supplant federal-court guesswork?"[34]

The second factor—the degree to which considerations of comity are relevant in light of the particular issue and case to be decided—similarly weighs in favor of certification. The Legislature enacted its general ban on public corporations owning or controlling package store permits in 1995, over 26 years ago. According to the parties, only two public corporations—GIG and Sarro Corp., who is not a party to this case—qualify for Grandfather Clause treatment. That may not seem like many. But when you factor in that GIG and Sarro could control up to 500 package stores between the two of

---

[31] *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018), *certified question accepted* (Oct. 26, 2018), *certified question answered*, 579 S.W.3d 53 (Tex. 2019).

[32] *McMillan*, 983 F.3d at 202.

[33] *Id.*

[34] *Id.*

No. 21-50322

them,[35] it threatens to blow a Texas-sized hole in the careful balance that the Legislature created.[36]

The third factor—practical limitations on the certification process—also weighs in favor of certification. The questions that GIG asks are purely legal. And we are untroubled by any potential delay. "[B]y long tradition, the Texas Supreme Court graciously accepts and prioritizes certified questions from this circuit."[37] Just over a year ago, we certified a products-liability question in *McMillan v. Amazon.com, Inc.* to the Supreme Court of Texas.[38] The Court issued its scholarly opinion exactly three months after hearing argument.[39] Should the Court accept today's certification, we have zero doubt it will speak with similar sharpness and swiftness.[40]

---

[35] *Cf.* Tex. Alco. Bev. Code § 22.04(a) ("A person may not hold or have an interest, directly or indirectly, in more than 250 package stores or in their business or permit.").

[36] *See Ritchie v. Rupe*, 443 S.W.3d 856, 880 (Tex. 2014) ("As we consider existing statutory remedies, we are mindful of the principle that, when the Legislature has enacted a comprehensive statutory scheme, we will refrain from imposing additional claims or procedures that may upset the Legislature's careful balance of policies and interests." (citation omitted)).

[37] *McMillan*, 983 F.3d at 203.

[38] *Id.*

[39] *See Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101 (Tex. 2021).

[40] Again, "[n]o pressure." *McMillan*, 983 F.3d at 203 n.51; *see also McMillan*, 625 S.W.3d at 105 n.5 ("Challenge accepted.").

No. 21-50322

### III

"By any measure, this case hits the certification bull's-eye," posing close, weighty questions of first impression.[41] Accordingly, we CERTIFY the following questions of state law to the Supreme Court of Texas:

1. If Texas Alcoholic Beverage Code Section 22.16(f) exempts a package store from Section 22.16(a), and if the package store sells any, most, or all of its shares to a corporation that does not itself qualify under Section 22.16(f), will the package store's package store permits remain valid?

2. If yes to (1), can the package store validly accumulate additional package store permits by reason of Section 22.16(f)?

We disclaim any intention or desire that the Court confine its reply to the precise form or scope of the question certified.

QUESTIONS CERTIFIED.

---

[41] *McMillan*, 983 F.3d at 203.