# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 23, 2022

Lyle W. Cayce
Clerk

No. 21-20168

ACS Primary Care Physicians Southwest, P.A.; Hill County Emergency Medical Associates, P.A.; Longhorn Emergency Medical Associates, P.A.; Central Texas Emergency Associates, P.A.; Emergency Associates of Central Texas, P.A.; Emergency Services of Texas, P.A.,

*Plaintiffs—Appellees*,

*versus*

UnitedHealthcare Insurance Company; UnitedHealthcare of Texas, Incorporated,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-1282

Before King, Graves, and Ho, *Circuit Judges*.

King, *Circuit Judge*:

Texas state law requires that health plan administrators pay emergency-care providers their "usual and customary rate" when those providers give emergent care to an out-of-network plan enrollee. Today, we are asked whether that same state law also creates an implied private right of

No. 21-20168

action on behalf of those emergency-care providers. For the reasons discussed below, we CERTIFY to the Supreme Court of Texas.

## I.

The plaintiffs-appellees are emergency-care physician groups ("Plaintiff Doctors") in Texas and the defendants-appellants— UnitedHealthcare Insurance Company and UnitedHealthcare of Texas (collectively, "UHC")—are health insurance companies. The Plaintiff Doctors did not participate in UHC's provider network. Nevertheless, by law, the Plaintiff Doctors must serve all those who require emergent care regardless of whether their patient is in-network. Texas law also imposes a minimum payment owed to the Plaintiff Doctors when they provide such care: emergency-care providers must be paid their "usual and customary rate[s]" for care provided to out-of-network plan enrollees. TEX. INS. CODE §§ 1271.155(a) (applicable to Health Maintenance Organizations), 1301.0053(a) (applicable to Exclusive Provider Organizations), and 1301.155(b) (applicable to Preferred Provider Organizations). These statutes, called the "emergency-care" statutes, read:

> § 1271.155(a): A health maintenance organization shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate.

> § 1301.0053(a): If an out-of-network provider provides emergency care as defined by Section 1301.155 to an enrollee in an exclusive provider benefit plan, the issuer of the plan shall reimburse the out-of-network provider at the usual and customary rate or at a rate agreed to by the issuer and the out-of-network provider for the provision of the services and any supply related to those services.

> § 1301.155(b): If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the

No. 21-20168

> following emergency care services at the usual and customary rate or at an agreed rate and at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider[.]

The Plaintiff Doctors provided various emergency medical services to patients enrolled in UHC's healthcare plans from January 2016 to the present day. All parties agreed that some amount of money must be paid by UHC to the Plaintiff Doctors; however, the Plaintiff Doctors believed that they were "paid at unacceptably low rates," well below their "usual and customary rates," and thus brought suit in Texas state court. UHC promptly removed the case to the federal district court for the Southern District of Texas.

The Plaintiff Doctors alleged that UHC violated the emergency-care statutes by failing to pay the "usual and customary rate[s]."[1] The district court dismissed the plaintiffs' claims under Texas Insurance Code § 1303.155(b) (the statute applicable to PPOs) for claims dated from January 1, 2016, to December 31, 2019, but it found that the remaining emergency-care statute claims survived.

UHC immediately sought an interlocutory review of two issues: (1) whether the emergency-care statutes provide for an implied private right of action; and (2) if so, whether ERISA § 514 preempts the claims brought under the emergency-care statutes.[2] Both the district court and this circuit granted UHC's request for interlocutory review. Soon after, on April 22, 2021, the Plaintiff Doctors moved to certify the first issue to the Texas Supreme Court.

---

[1] Appellees also brought breach of contract and quantum meruit claims, but these are not relevant to this appeal.

[2] Because we certify the first issue to the Texas Supreme Court, we do not address the second issue at this time.

No. 21-20168

## II.

This court may certify a question to the Supreme Court of Texas. *See McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020). We look to three factors to determine whether certification is proper:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Id.* (quoting *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018)). Here, each factor advises that we certify.

The first factor—the closeness of the question and the existence of sufficient sources of state law—favors certification. The question of whether the emergency-care statutes create an implied private right of action is a close one, and both parties present strong arguments in their favor. Under Texas law, an implied right of action may be found only if the plain language of the statutory text supports one. *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). The plaintiffs point us to Texas Supreme Court precedents that found implied rights of action in similarly precise statutory and constitutional language. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (finding an implied right of action in "no person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation"). *But see Brown*, 156 S.W.3d at 561-62 (finding an implied right of action in "[seller] is liable to the purchaser for . . . liquidated damages" but no implied right of action in "[seller is] 'subject to a penalty' of up to $500 a day."). Here, the emergency-care statutes provide what must

No. 21-20168

be paid (the "usual and customary rate"), who shall pay it ("an issuer of a plan"), and who shall be paid (an "out-of-network provider"). Therefore, a court could plausibly read the emergency-care statutes to provide an implied right of action, as the district court did.

On the other hand, these same Texas Supreme Court precedents adopt a rule of "strict construction" for courts reviewing a statute for an implied right of action. *Brown*, 156 S.W.3d at 566-67. Applying that rule, a Texas state appellate court has found that the emergency-care statutes do not provide an implied private right of action. *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458 (Tex. App.—Dallas 2021, pet. filed).[3] It explained that, given the detailed regulatory code from which the emergency-care statutes arise and the fact that the Texas Insurance Code expressly creates causes of action in other sections, it would be inappropriate to imply one here. *Id.* at 464-65. That, too, is a plausible reading. Thus, "any *Erie* guess would involve more divining than discerning," and certification is the favored route. *McMillan*, 983 F.3d at 202.

The second factor—comity—also strongly favors certification. In *McMillan*, we explained that "federal-to-state certification is prudent when consequential state-law ground is to be plowed, such as defining and delimiting state causes of action." *Id.* And that is precisely what the parties are asking this court to do. Whether there is an implied private right of action within the emergency-care statutes either enables or eliminates thousands of claims regarding the underpayment of insurers to non-network healthcare providers. Certainly, the state of Texas has a strong interest in the answer.

---

[3] The Texas Supreme Court has since requested full merits briefing on the issue. *Brief on the Merits Requested*, *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, No. 21-0291 (Tex. Sept. 24, 2021).

No. 21-20168

The third factor—practical limitations on the certification process—favors certification as well. The question posed is a legal one that is simple to frame (even if difficult to answer). The risk of delay is also minimal; "[t]o its immense credit, and for several years in a row, the Supreme Court of Texas has decided every argued case by the end of June." *Id.* at 203, *certified question accepted* (Jan. 8, 2021), *certified question answered*, 625 S.W.3d 101 (Tex. 2021). We are confident that, should the Court accept the certified question, its streak of timely decisions will continue.

## III.

We certify the following question of state law to the Supreme Court of Texas:

> Do §§ 1271.155(a), 1301.0053(a), and 1301.155(b) of the Texas Insurance Code authorize Plaintiff Doctors to bring a private cause of action against UHC for UHC's failure to reimburse Plaintiff Doctors for out-of-network emergency care at a "usual and customary" rate?

We disclaim any intention or desire that the Court confine its reply to the precise form or scope of the question certified.

QUESTION CERTIFIED.



**A True Copy**
**Certified Feb 23, 2022**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

6