# Supreme Court of Texas

No. 24-0714

Gary Perez and Matilde Torres,
*Appellants*,

v.

City of San Antonio,
*Appellee*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

JUSTICE SULLIVAN, dissenting.

Last summer, the U.S. Court of Appeals for the Fifth Circuit asked us whether Article I, Section 6-a of the Texas Constitution "impose[s] a categorical bar on any limitation of any religious service, regardless of the sort of limitation and the government's interest in that limitation." With deepest respect for my esteemed friends on the Fifth Circuit and on our Court, I would decline this expansive invitation to issue an advisory opinion on a "new provision" of our Bill of Rights that "[n]o Texas court has construed." 711 S.W.3d 204, 204 (Tex. 2024) (statement of Young, J.).

# I

The Fifth Circuit panel that certified this question initially held that the plaintiffs' "sparse briefing" made the Section 6-a issue "a determination we need not reach in the instant case." 98 F.4th 586, 611–12 (5th Cir.), *reh'g granted and opinion withdrawn*, 115 F.4th 422 (5th Cir. 2024). The plaintiffs' opening brief in that court argued that Section 6-a "does not even allow the City to try to satisfy strict scrutiny; it is a categorical bar on what the City seeks to do." Appellants' Br. at 32, Cause No. 23-50746 (5th Cir. Nov. 8, 2023); *see also id.* at 3–4, 28–29, 47–51. But the plaintiffs devoted the bulk of their briefing to three other claims, and the Fifth Circuit followed their lead. *See* 98 F.4th at 594–611 (rejecting claims under the Texas Religious Freedom Restoration Act, the Free Exercise Clause of the U.S. Constitution, and Article I, Section 6 of the Texas Constitution); *id.* at 614 (Higginson, J., concurring in part and dissenting in part) ("Plaintiffs have demonstrated a likely violation of their rights under the Texas Religious Freedom Restoration Act . . . .").

On rehearing, however, the divided three-judge panel "pretermit[ted] further consideration of those claims." 115 F.4th at 427. The Fifth Circuit did so by certifying the Section 6-a question that, in its own words, the plaintiffs "did not adequately brief." *Id.* at 423. To wit:

> Does the "Religious Service Protections" provision of the Constitution of the State of Texas—as expressed in Article [I], Section 6-a—impose a categorical bar on any limitation of any religious service, regardless of the sort of limitation and the government's interest in that limitation?

*Id.* at 428.

## II

I don't think this Court should answer the Fifth Circuit's question. Neither do my wise colleagues, judging from the majority opinion. Today's opinion is characteristically thoughtful but tellingly nonresponsive. Rather than answer a question we wish had been asked, we should exercise our discretion not to issue the advisory opinion that was actually requested. *See* TEX. R. APP. P. 58.1 ("The Supreme Court may decline to answer the questions certified to it.").

To answer a certified question is to give an advisory opinion. *See, e.g.*, *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, ___ S.W.3d ___, 2025 WL 1642437, at *1, *7, *21 (Tex. May 30, 2025); *Lucas v. United States*, 757 S.W.2d 687, 702 n.1 (Tex. 1988) (Phillips, C.J., dissenting); *cf. United Servs. Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 858–64 (Tex. 1965). The Section 6-a question that has been certified to us here seeks "an advisory opinion [on] an abstract question of law." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). To "dispense contingent advice" on so "academic" a question wouldn't be "[p]rudent." *City of Dallas v. Albert*, 354 S.W.3d 368, 384 (Tex. 2011) (Willett, J., dissenting); *see also Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) ("Refraining from issuing advisory opinions and waiting for cases' timely factual development is . . . essential to the proper development of the [S]tate's jurisprudence.").

Perhaps recognizing as much, the majority refuses this certified request to take Section 6-a and "really explore the studio space." *Saturday Night Live: More Cowbell* (NBC television broadcast Apr. 8,

3

2000). As the majority sensibly explains, "we need not endeavor to comprehensively define [Section 6-a's] scope to provide a helpful answer here." *Ante* at 23. Instead, it opines that the Section 6-a claim urged by these federal-court plaintiffs is a loser: "To whatever extent we could construe the text broadly to encompass [the plaintiffs'] claims, [Section 6-a's] linguistic and historical context establishes that it does not encompass 'limitations' on religious services that result from the government's preservation and maintenance of the natural features of public lands." *Id.* at 35.

To my eye, the majority opinion doesn't "confine [its] answer to the question propounded by the certifying court." *Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 798 (Tex. 1992). That's a problem, because we lack jurisdiction to issue an advisory opinion that answers a certified question the Fifth Circuit didn't ask. "Our jurisdiction in these matters is exclusively to 'answer *questions*.'" *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 n.6 (Tex. 2020) (quoting TEX. CONST. art. V, § 3-c(a)). "To avoid exceeding our jurisdiction, 'we answer only the questions certified and nothing more.'" *Id.* (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 349 (Tex. 1990)).

The majority responds that it's just trying "to answer the question in a way that helps the federal courts resolve the case." *Ante* at 24 n.30. Lending a hand is all well and good, provided we have jurisdiction to do so. But will it really help the Fifth Circuit to know that, in this Court's (perhaps uninvited) opinion, these plaintiffs can't win under Section 6-a? The plaintiffs already lost that fight, after all, when they forfeited their Section 6-a argument through inadequate briefing before

4

the three-judge panel. *See* 98 F.4th at 611–12 (condemning the plaintiffs' "sparse briefing"); *see also id.* at 597 ("A party forfeits arguments by inadequately briefing them on appeal."). Even on panel rehearing, the Fifth Circuit seemingly reiterated that the plaintiffs "did not adequately brief that issue," before certifying the Section 6-a question to us anyway. 115 F.4th at 423. Given that our rules insist on answering "*determinative* questions of Texas law," TEX. R. APP. P. 58.1 (emphasis added), we shouldn't go out of our way to torpedo a Section 6-a claim that might sink anyway due to forfeiture when the plaintiffs return to the Fifth Circuit.[1]

Were we at liberty to give an advisory opinion on a state-law question nobody asked us, the plaintiffs might fare better with their claims under the Texas Religious Freedom Restoration Act or Article I, Section 6 of the Texas Constitution. Perhaps we would agree that they "have demonstrated a likely violation of their rights under the Texas Religious Freedom Restoration Act." 98 F.4th at 614 (Higginson, J., concurring in part and dissenting in part); *cf. In re B.L.D.*, 113 S.W.3d

---

[1] On my understanding of federal procedure, the plaintiffs couldn't plug the forfeiture hole by saying more about Section 6-a in their petitions for panel rehearing and rehearing en banc than had been said in their appellants' brief. *See, e.g.*, *Hightower v. Tex. Hosp. Ass'n*, 73 F.3d 43, 44 (5th Cir. 1996) ("In their petition for rehearing, appellees have raised a number of arguments that they did not make to this court in their original appellate briefs. . . . These arguments have been raised too late in the appellate process to be useful to this court, and they are deemed waived and have played no role in our decision."); FED. R. APP. P. 28(a)(8)(A) ("The appellant's brief must contain . . . the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."). But my understanding doesn't really matter: The forfeiture question can be decided only by the Fifth Circuit's distinguished three-judge panel, or by all seventeen of its active judges sitting en banc.

5

340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds."). Or maybe we'd finally stop assuming that *Employment Division v. Smith*, 494 U.S. 872 (1990), reflects a sound construction of Section 6. *See Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 677 (Tex. 2022) (Young, J., concurring) (noting that "freedom of worship" under TEX. CONST. art. I, § 6 is "provided with much greater detail than [its] federal analogue[ ]"). The majority opinion "[e]xpress[es] no opinions as to those claims," however, because they're not included within a certified question that "'pretermit[s]'" their consideration. *Ante* at 35 (quoting 115 F.4th at 427). True enough. But neither has the Fifth Circuit asked us to pick a winner under Section 6-a.

### III

As then-Justice Cornyn once explained, "[t]he Fifth Circuit . . . has had more extensive experience with certification than any other court, state or federal." *Amberboy*, 831 S.W.2d at 798 n.10. In 1960, with encouragement from Justice Frankfurter, the Fifth Circuit sent the very first certified question to a state supreme court. *See Sun Ins. Off., Ltd. v. Clay*, 319 F.2d 505, 508 (5th Cir. 1963); *Clay v. Sun Ins. Off. Ltd.*, 363 U.S. 207, 212 & n.3 (1960). This Court, by contrast, only started accepting certified questions after the People of Texas gave us "jurisdiction to answer questions of state law certified from a federal appellate court" in 1985. TEX. CONST. art. V, § 3-c(a).

Four decades later, our two courts have established a strong tradition of "cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). In unfailingly gracious terms, the Fifth Circuit

6

often certifies questions of Texas law for our consideration.[2]  In turn, this Court works hard to answer them with alacrity and good cheer.[3]

---

[2] *See, e.g.*, *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 23-10804, 2024 WL 4132409, at \*8 (5th Cir. Sept. 10, 2024) (per curiam) ("[T]he Supreme Court of Texas has historically been very prompt in its certification responses."); *Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 18 F.4th 802, 805 (5th Cir. 2021) ("The Supreme Court of Texas has graciously accepted and promptly answered our questions time and again."); *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 203 & n.51 (5th Cir. 2020) ("But by long tradition, the Texas Supreme Court graciously accepts and prioritizes certified questions from this circuit, and we are confident that the Court's impressive streak of timely clearing its docket will remain unbroken.  No pressure."); *cf. Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1247 (5th Cir. 1997) (per curiam) ("[C]ertification is such an important resource to this court that we will not risk its continued availability by going to that well too often."); *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992) (per curiam) ("Certification to State Supreme Courts is a valuable resource of this court, so we dare not abuse it by over use lest we wear out our welcome.").

[3] *See, e.g.*, *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, ___ S.W.3d ___, 2025 WL 1478179 (Tex. May 23, 2025); *Butler v. Collins*, ___ S.W.3d ___, 2025 WL 1478180 (Tex. May 23, 2025); *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality*, 707 S.W.3d 102 (Tex. 2025); *Roe v. Patterson*, 707 S.W.3d 94 (Tex. 2025); *Carl v. Hilcorp Energy Co.*, 689 S.W.3d 894 (Tex. 2024); *Hogan v. S. Methodist Univ.*, 688 S.W.3d 852 (Tex. 2024); *Moore v. Wells Fargo Bank, N.A.*, 685 S.W.3d 843 (Tex. 2024); *Rodriguez v. Safeco Ins. Co.*, 684 S.W.3d 789 (Tex. 2024); *Sanders v. Boeing Co.*, 680 S.W.3d 340 (Tex. 2023); *Brown v. City of Houston*, 660 S.W.3d 749 (Tex. 2023); *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424 (Tex. 2023); *Gabriel Inv. Grp., Inc. v. Tex. Alcoholic Beverage Comm'n*, 646 S.W.3d 790 (Tex. 2022); *Paxton v. Longoria*, 646 S.W.3d 532 (Tex. 2022); *Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 649 S.W.3d 197 (Tex. 2022); *Whole Woman's Health v. Jackson*, 642 S.W.3d 569 (Tex. 2022); *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551 (Tex. 2022); *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195 (Tex. 2022); *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640 (Tex. 2021); *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101 (Tex. 2021); *Fed. Home Loan Mortg. Corp. v. Zepeda*, 601 S.W.3d 763 (Tex. 2020); *Richards*, 597 S.W.3d 492; *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 594 S.W.3d 309 (Tex. 2020).

"We find such cooperative effort to be in the best interests of an orderly development of our own unique jurisprudence, and to the bar, as well as in the best interests of the litigants we concurrently serve." *Amberboy*, 831 S.W.2d at 798 n.9.

Our productive partnership with the Fifth Circuit will surely endure, despite my misgivings about one out of many certified questions. Because I would decline to answer this particular question, though, I respectfully dissent.

James P. Sullivan
Justice

**OPINION FILED:** June 13, 2025